MARILYN MIGLIN, INC., Plaintiff,

v.

GOTTEX INDUSTRIES, INC., and Gottex Models, Ltd., Defendants.

GOTTEX INDUSTRIES, INC., Plaintiff,

v.

Lee MIGLIN, Defendant.

Nos. 90 Civ. 2915 (DNE), 91 Civ. 1278 (DNE).

United States District Court, S.D. New York.

April 29, 1992.

---

David C. Jacobson, Sonnenschein Nath & Rosenthal, Chicago, Ill. and Margaret S. Determan, and Kenneth J. Pfaehler, Sonnenschein Nath & Rosenthal, New York City, for Marilyn Miglin, Inc. and Lee Miglin.

Aaron B. Karas and Howard Miskin, Helfgott & Karas, New York City, for Gottex Industries, Inc. and Gottex Models, Ltd.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

In these two consolidated actions, each party has asserted against the other claims of breach of contract, fraud, and tortious interference with prospective economic advantage; they also seek recovery under various equitable theories. The plaintiff in the first action is Marilyn Miglin, Inc. ("Miglin"); the defendants in that action, Gottex Industries, Inc. and Gottex Models, Ltd. (collectively referred to as "Gottex"), have counterclaimed and, in the related action, have sued one of Miglin's directors, Lee Miglin, claiming breach of a personal guaranty, promissory estoppel, fraud, and tortious interference. The parties consented to my jurisdiction over the cases for all purposes including trial pursuant to 28 U.S.C. § 636(c). Gottex has now moved for summary judgment, seeking dismissal of Miglin's claims against it pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons that follow, I grant the motion in part and deny it in part.

*Background*

The claims in this case arise from a failed attempt at cooperation between Gottex Industries, Inc. ("Gottex Industries") and Marilyn Miglin, Inc. ("Miglin"). Both are multi-million dollar corporations that are largely under family control. Both enjoy wide reputations for dealing in high-quality merchandise. Gottex Industries, a New York corporation, is the exclusive U.S. distributor of swimwear that is made and sold by Gottex Models, Ltd. ("Gottex Models"), an Israeli corporation. The president of Gottex Industries, Miriam Ruzow, is a daughter of the founders of Gottex Models. Miglin, an Illinois corporation, makes and sells fragrances and perfume. Its president is Marilyn Miglin, and her husband, Lee Miglin, is a shareholder and director. The parties dispute many of the details of their past relationship. The following account consists as fully as possible of uncontested facts, and I have noted where the parties' accounts differ. Additional facts and allegations appear below where relevant to the legal analysis.

In 1986, Gottex Industries began to seek ways in which to expand the use of the Gottex name and trademark from swimwear to other product lines, including suncare products. In late 1987, Gottex began negotiations with Manhattan Ice, Inc. ("Manhattan Ice"), a fragrance maker, to allow use of the Gottex trademark in connection with a new sun-care line. Gottex and Manhattan Ice signed a license agreement on September 15, 1988, but on November 4, 1988, Gottex advised Manhattan Ice of its intention to terminate the agreement because Manhattan Ice's October royalty payment had been returned for lack of sufficient funds. Shortly afterwards Manhattan Ice declared bankruptcy.

Before the termination of Manhattan Ice, however, advertisements had been placed in national fashion publications to announce the introduction of the new suncare line: Gottex Systeme Soleil. Gottex now sought a company to take the place of Manhattan Ice in bringing out the new products that had been publicized. Gottex learned of Miglin through Galland/Gunn, the licensing agent that earlier had introduced Gottex to Manhattan Ice. After some preliminary contact between Miglin and Manhattan Ice, Dennis MacFarlane, Miglin's executive vice president, met on January 20, 1987 with Ms. Ruzow and other Miglin and Gottex officers. Many of the claims in this case involve conflicting versions of the circumstances surrounding this meeting.

Miglin claims that it and Gottex agreed in principle to all of the significant details of their relationship, so that any subsequent writing would be a mere "memorialization" of terms upon which the parties had already agreed. Gottex, however, contends that significant issues remained to be negotiated after the meeting and that the document produced subsequent to this meeting was merely a "proposed agreement." Miglin also claims that at this meeting Ms. Ruzow exaggerated how much Manhattan Ice had already accomplished in developing and marketing Systeme Soleil. Gottex contends that Miglin knew the extent of Manhattan Ice's

progress from meetings with Manhattan Ice and Galland/Gunn prior to the meeting between Miglin and Gottex. Following the January 20 meeting and other contacts between the parties, a license agreement was drafted by lawyers for both companies. In essence, this agreement gave Miglin long-term use of the Gottex trademark with which to market Systeme Soleil. In return, Miglin would pay Gottex a 5% annual royalty payment, though royalties would be waived for the first year. Gottex never signed this agreement, despite continued redrafting of it to reflect ongoing discussions between the two corporations in February and March. Miglin contends, however, that Gottex gave repeated assurances of its readiness to sign the agreement.

In early April, 1989, Miglin signed the agreement. It also satisfied Gottex's request that Lee Miglin personally guarantee a stated minimum royalty amount for each of the first five years of the agreement. Since the January meeting, Miglin had pressed ahead with formulating the new product, designing packaging, and creating a new marketing program. Miglin succeeded in shipping the new product in the spring of 1989 to four prominent department store chains, as agreed upon, although not by the April 1 delivery date specified in the draft license agreement.

During this time the Miglin–Gottex relationship was characterized both by cooperation and by tension. On the one hand, as Gottex required, Miglin purchased release of the Gottex license from Manhattan Ice and also submitted its designs using the Gottex trademark to Ms. Ruzow for her approval. On the other hand, Gottex contends that it also required, as a condition for waiving the first-year royalty fee and then as a condition to executing the agreement at all, that Miglin settle any fee requests that Galland/Gunn would make to Gottex for having facilitated the licensing agreement with Miglin. Gottex also claims that Miglin defectively formulated and mis-branded Systeme Soleil and that it failed to obtain the necessary liability insurance. For its part, Miglin claims that Gottex fell far short of providing the promised assistance in marketing and promoting Systeme Soleil.

A breaking point appears to have been reached at the Gottex fashion show held on August 8, 1989. While Gottex allowed Miglin representatives to hand out Systeme Soleil samples, Miglin complains that Gottex did not even mention the new product in the show itself. Three weeks after the show, Lee Miglin terminated Miglin's relationship with Gottex, citing several such instances of Gottex's alleged lack of support. (Letter from Lee Miglin to Miriam Ruzow, of 8/30/89, Gottex' Exhibits to Memorandum in Support of Motion for Summary Judgment ("Gottex exhs.") at tab 47). On September 18, Mr. MacFarlane requested that Gottex reimburse Miglin for the expense of finished goods and other items that Miglin had paid for in connection with developing and marketing Systeme Soleil. (Letter from Dennis MacFarlane to Miriam Ruzow of 9/18/89, Miglin's Exhibits to Memorandum in Opposition to Motion for Summary Judgment ("Miglin exhs.") at tab 20). When Gottex refused, Miglin brought suit against Gottex Industries and Gottex Models in United States District Court for the Northern District of Illinois. Gottex counterclaimed on the basis that if there were an agreement between Gottex and Miglin, it was Miglin that had breached it.

On April 6, 1990 the United States District Court for the Northern District of Illinois granted Gottex' motion to have the Miglin suit transferred to this court pursuant to 28 U.S.C. § 1404(a). Here it was consolidated with an action that Gottex had filed against Lee Miglin for breach of the guaranty to pay minimum royalties and for damages on the basis of claims of promissory estoppel, fraud, and tortious interference. On October 31, 1990, Judge David N. Edelstein, then presiding over the consolidated cases, denied Gottex' motion for dismissal. Subsequently, the cases were referred to me and Gottex made the instant motion for summary judgment, seeking dismissal of Miglin's claims.

## Discussion

### A. Law of the Case

■ The Court must determine two preliminary questions before considering the merits of Gottex' motion for summary judgment. First, Miglin invokes the law of the case doctrine, arguing that I am precluded from considering Gottex' motion for summary judgment because of Judge Edelstein's order denying of Gottex' motion to dismiss the same claims. Miglin argues that Gottex' motion to dismiss should be considered a motion for summary judgment because Gottex submitted some evidence in support of it. This contention is meritless. When a party submits affidavits or other evidence in connection with a motion to dismiss, the court has two options: it may exclude the additional material and decide the motion on the basis of the complaint alone, or it may convert the motion to one for summary judgment and give all parties the opportunity to present supporting material. *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988). Here it is clear that Judge Edelstein chose the first option. He denied Gottex' motion in a one-sentence order that gives no indication that he considered any evidence outside of the pleadings. Moreover, in the fourteen months between that order and the filing of the instant motion, the parties have expanded the record to the point that it now includes, by Miglin's estimate, "nearly 750 pages of exhibits," Pl.'s Sur-reply at 1. Thus it is particularly inapt for Miglin to contend, as it does repeatedly in its papers, that Judge Edelstein's order forecloses Gottex's motion.

### B. Personal Jurisdiction

■ A second preliminary issue is raised by Gottex's claim that Miglin has failed to establish *in personam* jurisdiction over the Israeli corporation Gottex Models. The Second Circuit has held that until an evidentiary hearing or trial is held, a plaintiff need only make a prima facie showing that jurisdiction exists. *Beacon Enterprises v. Menzies*, 715 F.2d 757, 768 (2d Cir.1983). In the absence of a hearing and where doubt exists on jurisdictional elements, pleadings and affidavits are to be construed in favor of the plaintiff. *Id.*

Miglin has made a prima facie showing that jurisdiction exists under section 302 of New York's Civil Practice Law & Rules (McKinney 1990), that state's long arm statute. Section 302(a)1 provides that "a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent transacts any business within the state." Such jurisdiction is limited to causes of action arising from the transaction. For purposes of construing the agency provision of § 302, " 'agent' ... include[s] any person who, with the consent of the nondomiciliary and under some measure of his control, acts in New York for the benefit of the nondomiciliary." *Mayes v. Leipziger*, 674 F.2d 178, 181 (2d Cir. 1982).

Here, Miglin contends that Gottex Models holds the registration in the United States for the trademark "Gottex," and Gottex Industries acted as Gottex Models' agent in negotiating the agreement for Miglin's use of the Gottex trademark. Because "significant contract negotiations in New York constitute transaction of business here for jurisdictional purposes," *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1530 (S.D.N.Y.1985), and Miglin's claims arise from its dealings in New York with Gottex Models' agent, Miglin has made a prima facie showing of personal jurisdiction. Gottex's motion to dismiss for lack of personal jurisdiction is therefore denied.

### C. The Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted only "when, viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." *Cinema North Corp. v. Plaza at Latham Associates*, 867 F.2d 135, 138 (2d Cir.1989) (citations omitted). However, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Furthermore,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, disagreement about non-material facts or controversy over the legal significance of undisputed facts will not impede summary judgment. Finally, in making its determination a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

### D. *Breach of Contract*

■ First, Miglin claims that Gottex breached a contract that existed between the parties from the time of their January, 1989 meeting. Miglin alleges that the parties reached an oral agreement at this meeting; thus Miglin characterizes the draft agreement that the parties prepared after this meeting but did not execute as a mere memorialization. For present purposes, Miglin argues that whether or not Gottex intended to be bound by this oral agreement is a genuine issue of material fact that must be decided at trial. As a matter of law, however, a contract did not exist between the parties, and consequently Miglin's breach of contract claim cannot survive the motion for summary judgment.

Under New York law,[1] in the absence of an executed written agreement the Court looks to the parties' "expressed intentions"—firstly, whether or not "a party gives forthright reasonable signals that it means to be bound only by a written agreement." *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74, 75 (2d Cir.1984). The Second Circuit has identified four factors to consider in order to determine whether it is the mutual intention of the parties to be bound in the absence of a writing. *Id.* at 75–77. Among the subsidiary factors are: whether there was partial performance by the proponent of the contract and acceptance of the performance by the party disclaiming the contract; whether there was nothing left to negotiate at the time of the alleged oral agreement; and whether it is the norm rather than the exception that an agreement about such "complex and substantial business matters" be in writing. *Id.* at 75.

Of all the factors, however, the most important is a party's "explicit statement" that it does not intend to be bound except

---

1. A federal court sitting in a diversity case applies the choice of law rules of the state in which the case was brought. *Klaxon v. Stentor Electric Manufacturing Co. of North America,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this case, Illinois choice of law rules apply because Miglin brought the claims that are the subject of the instant motion in the United States District Court for the Northern District of Illinois. "[W]here the defendants seek to transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964) (footnote omitted). Under Illinois law, a choice of law stipulation, formal or informal, that bears a reasonable relationship to the alleged transaction and to the injury in question, can be honored in both contract and tort cases. *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987); *Twohy v. First National Bank of Chicago,* 758 F.2d 1185, 1191 (7th Cir. 1985). Here, the draft license agreement provides that New York law is applicable, *see* Miglin exhs. at tab 26, § 19, and the parties agree that on that basis New York substantive law controls.

by an executed writing. *R.G. Group, Inc.*, 751 F.2d at 75; *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989). For instance, in *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257 (2d Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984), neither party took exception over the course of bargaining to a draft provision which stated, *"when executed and delivered*, this * * * agreement and each of the Purchase Agreements will be a valid and binding agreement." *Id.* at 262 (emphasis added). On the basis of this language the court found that there was no intent to be bound in the absence of an executed writing. *Id.*

Here, the evidence of the explicit statements of the parties is likewise dispositive of Miglin's claim that the parties were bound by an oral agreement. The draft agreements prepared by Gottex and reviewed by Miglin each contain the following provision:

> 20. *Effectiveness of Agreement ....*
>
> (a) this Agreement is presented to GRANTEE for signature, but is not to be construed as an offer and shall *not* in any way bind GRANTOR or GRANTEE *until* such time as GRANTOR and GRANTEE have *executed and delivered* this Agreement.

Draft Agreements of 2/3/87, 2/16/89, 2/28/89, Gottex exhs. at tabs 22, 24, 25 (emphases added). Here the contractual language is negative as well as conditional; it cautions that there will *not* be a binding obligation *until* the agreement is executed and delivered. Thus, it demonstrates even more strongly than the clause cited in *Reprosystem* that the parties did not intend to be bound in the absence of an executed writing. In addition, Miglin's attorney inserted the following section into the same paragraph in a later version of the draft agreement:

> (d) this Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more of the counterparts have been *signed by each of the parties and delivered to the other parties*, it

being understood that all parties need not sign the same counterpart.

Draft Agreement of 4/3/89, Gottex exhs. at tab 25 (emphasis added). This section provides further evidence that the parties did not intend to be bound until the agreement was executed. Accordingly, no contract existed between Miglin and Gottex.

This conclusion is not disturbed by the secondary factors set out in *R.G. Group, Inc.*, 751 F.2d at 75–77. At most, Miglin can claim considerable partial performance. Nevertheless, this will not outweigh clear evidence of an intention not to be bound until a written agreement is executed. *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d at 72, 73 (granting summary judgment on breach of contract claim despite substantial expenditures and collateral contracts entered into by plaintiff). Moreover, the remaining two factors do not at all support Miglin's claim. The record shows that some matters for negotiation indeed remained after the time of the alleged oral agreement, including the term of Lee Miglin's personal guaranty for minimum royalties and Miglin's liability following any assignment. Letters of Amy Fisher to Erica Weissman, of 2/16/89, 2/28/89, Gottex exhs. at tabs 24, 25. Finally, no evidence has been introduced as to whether or not it is the norm in this industry to rely on oral agreements in connection with a business matter as substantial and complex as this. Manhattan Ice apparently cooperated with Gottex for several months before obtaining an executed license agreement, but by itself this evidence is not enough to establish that such a relationship was a normal custom and practice.

**E.** *Promissory Estoppel*

Next, Miglin alleges damages based upon a theory of promissory estoppel. According to Miglin, Gottex provided assurances to Miglin that it would sign the license agreement; Miglin reasonably relied on these promises in developing and marketing the products that would be subject to the agreement; and Miglin was injured when Gottex failed to make good on its promises and Miglin was unable to continue selling the products it had developed.

On this claim disputed factual issues preclude summary judgment.

In order to establish a claim based on promissory estoppel, a party must prove three elements: "[1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made; and [3] an injury sustained by the party asserting the estoppel by reason of his reliance." *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d at 73. In *Arcadian Phosphates*, a factory owner and the potential buyer of a majority interest in the factory entered into a preliminary agreement. The potential buyer then entered into collateral contracts and made substantial expenditures with the knowledge and approval of the factory owner. After a dramatic change in market conditions, however, the owner drastically changed its bargaining position, and negotiations ended. As discussed above, the Second Circuit found that summary judgment had been properly granted on the breach-of-contract claim, since the language of the preliminary agreement demonstrated that the parties did not intend to be bound by it. *Id.* at 72. Nevertheless, the court also found that there existed a genuine issue of fact as to whether the potential buyer reasonably relied on the promise in the preliminary agreement "to cooperate fully and work judiciously in order to expedite the closing date and consummate the sale of the business." *Id.* at 70–71, 73–74. Therefore, summary judgment was not appropriate on the claim of promissory estoppel.

Here, Miglin alleges that Gottex gave assurances that it would assist and cooperate with Miglin and that it would execute the draft agreement. Affidavit of Lee Miglin, dated 2/27/92, ¶¶ 12, 13, 14. Miglin further alleges that Gottex knew of Miglin's expenditures in developing and marketing Systeme Soleil, just as the defendant in *Arcadian Phosphates* knew of the plaintiff's expenditures. Miglin also points to Gottex' demand that many of the details of the marketing of the products be submitted for Gottex' approval. Based on the evidence submitted in support of these allegations, I find that there exist genuine issues of material fact as to all elements of Miglin's promissory estoppel claim.

Gottex nevertheless argues that the statute of frauds should bar Miglin's promissory estoppel claim. Clearly, such a claim usually requires the existence of a writing executed either contemporaneously with or subsequent to the alleged promise. *See, e.g., Philo Smith & Co. v. USLIFE Corp.*, 420 F.Supp. 1266, 1271 (S.D.N.Y.1976), *aff'd*, 554 F.2d 34 (2d Cir.1977). In some circumstances, however, New York courts have recognized that a case for promissory estoppel can be established without a signed writing. *Swerdloff v. Mobil Oil Corp.*, 74 A.D.2d 258, 263, 427 N.Y.S.2d 266, 268–69 (2d Dep't), *app. den.*, 50 N.Y.2d 913, 431 N.Y.S.2d 523, 409 N.E.2d 995 (1980). Subsequent to *Swerdloff,* in *Esquire Radio & Electronics, Inc. v. Montgomery Ward, Inc.*, 804 F.2d 787 (2d Cir.1986), the Second Circuit held that a claim based on a theory of promissory estoppel was properly submitted to the jury despite the appellant's argument that the statute of frauds barred the claim. *Id.* at 790. The appellant contended that any obligation that it had was unenforceable under the statute of frauds. Nevertheless the court reasoned that because the appellant had reneged on a promise on which the appellee had reasonably relied, the appellant was equitably estopped from raising the statute of frauds. *Id.* at 794.

Here the facts alleged by Miglin do not guarantee that all the elements of promissory estoppel will be found. Moreover, promissory estoppel is reserved for cases where " 'the circumstances render it *unconscionable* to deny' the promise upon which the plaintiff relied." *Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir.1977) (quoting 3 *Williston on Contracts* § 553A, at 801 (3d ed. 1960)). In light of the considerable partial performance and substantial injury claimed by Miglin, however, along with the allegation that Gottex was fully aware of Miglin's efforts and indeed encouraged them, summary judgment is not appropriate, even though no executed agreement exists. As the Second Circuit has stated, a party may

withdraw himself from the policy and defense of the statute [of frauds], or waive its protection, by inducing or permitting without remonstrance another party to the agreement to do acts, pursuant to and in reliance upon the agreement, *to such an extent and so substantial in quality as to irremediably alter his situation and make the interposition of the statue against performance a fraud.*

*Id.* at 36 (quoting *Woolley v. Stewart,* 222 N.Y. 347, 350–51, 118 N.E. 847, 848 (1918)). Thus, as there exist genuine issues of material fact as to the three elements of promissory estoppel, the Gottex's motion for summary judgment on this claim is denied.

### F. *Fraud*

Next Miglin claims that Gottex fraudulently induced its performance by making false representations as to the extent of performance that remained in order to develop and market the Systeme Soleil suncare line and then fraudulently promising to execute the license agreement and provide support to Gottex in promoting the new product.

Miglin's fraud claim is distinct from its claim under the unexecuted license agreement and is not affected by the Court's ruling that no enforceable agreement existed between Miglin and Gottex. In *Channel Master Corp. v. Aluminum Ltd. Sales,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958), the New York Court of Appeals held that a claim for damages caused by a fraudulent promise could lie even though the absence of a writing would bar a suit for enforcement of the promise. *Id.* at 408, 176 N.Y.S.2d at 263, 151 N.E.2d at 836. Subsequently, the Second Circuit has held that summary judgment may not be appropriate on a fraudulent inducement claim even though the plaintiff is barred from suing on the contract that was fraudulently induced. *See Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897 (2d Cir.1980); *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir.1979); *see also Cavalier Label Co. v. Polytam, Ltd.,* 687 F.Supp. 872 (S.D.N.Y. 1988). In *Hargrave,* the court set forth the rationale for preserving the fraud claim: "[t]ort liability is imposed on the basis of a social policy that disapproves of a specific kind of harm irrespective of any agreement. Specifically the law of fraud seeks to protect against injury those who rely to their detriment on the deliberate dishonest statements of another." *Hargrave v. Oki Nursery, Inc.,* 636 F.2d at 899 (citation omitted). "Where the conduct alleged breaches a legal duty which exists 'independent of contractual relations between the parties' a plaintiff may sue in tort." *Id.* (quoting *Channel Master Corp. v. Aluminum Ltd. Sales,* 4 N.Y.2d at 408, 176 N.Y.S.2d at 263, 151 N.E.2d at 836). Thus, if Miglin can establish a prima facie fraud claim here, it will survive a motion for summary judgment even though no enforceable agreement existed between Miglin and Gottex.

Miglin has alleged facts sufficient to indicate that at a minimum there exists a genuine issue of material fact as to each of the elements needed to prove a fraudulent misrepresentation or fraudulent promise. Under New York law, Miglin must prove: (1) that Gottex made a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by Gottex; (5) that the misrepresentation was made for purposes of inducing Miglin to rely on it; and (6) that Miglin rightfully did so rely (7) in ignorance of its falsity (8) to Miglin's injury. *See Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987); *Brown v. Lockwood,* 76 A.D.2d 721, 730, 432 N.Y.S.2d 186, 193 (2d Dep't 1980). Miglin has alleged that product development and marketing of the planned Gottex sun-care line fell far short of the levels represented by Ms. Ruzow at her January 20, 1989 meeting with Mr. MacFarlane and that Miglin undertook performance due to a mistaken belief in the feasibility of completing work in time to make the new product line available for the peak selling season. Furthermore, Gottex admits that it was eager to get to market the new sun-care product line which it had announced publicly but which had then become stalled due to the bankruptcy of Miglin's predecessor, Manhattan Ice. Therefore, according to Miglin, Ms. Ruzow deliberately exaggerated the

extent of Manhattan Ice's work in order to interest Miglin in a venture that otherwise would have seemed unrealistic. Finally, Miglin alleges damages to the extent of its expenditures in producing and marketing the Gottex sun-care products. Thus, for present purposes, Miglin has sufficiently established that Gottex knowingly made misrepresentations with the intent of inducing Miglin's reliance and that Miglin was injured because of its reliance.

■ Miglin further alleges that Gottex's fraudulent promises induced it to continue performance. To prove this claim, Miglin needs to prove that Gottex's promises to it were made with present intent not to perform the promised acts. Under New York law, a failure to perform promises of future acts is not fraudulent unless there existed at the time the promise was made an intent not to perform. *Murray v. Xerox Corp.*, 811 F.2d at 121; *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 210, 411 N.Y.S.2d 66, 68 (4th Dep't 1978). Miglin alleges that Gottex gave assurances that it would execute the license agreement and that it promised to do more to help introduce and market the sun-care line than in fact it did. Thus, Gottex allegedly induced Miglin's continuing performance while at the same time avoiding a formal agreement with Miglin as well as the closer association of the two enterprises that would have resulted from Gottex' more active promotion of the sun-care line. Again, Miglin's allegation is supported by Gottex' admitted eagerness to make good on the public announcement of Systeme Soleil. The allegation gains additional support from Gottex' averment that it came to be displeased with Miglin's performance. Thus, Gottex may have tried to avoid a close and binding relationship with Miglin while still attempting to assure Miglin's short-term performance. In addition, Miglin claims that it would not have continued performance if it had not relied upon Gottex' assurances and that it was injured as a result of this additional reliance. Therefore, Miglin's allegations are sufficient to establish the elements of a fraudulent promise, and Gottex' motion for summary judgment on this claim is denied.

### G. Tortious Interference with Prospective Economic Advantage

■ Miglin's other claims merit briefer treatment. First, Miglin claims that Gottex tortiously interfered with Miglin's prospective business relations with stores that would have stocked the Gottex sun-care line if production and marketing had continued. To state a claim for this tort, however, the plaintiff must establish that the defendant indeed *interfered* with business relations between the plaintiff and a third party. *Volvo North America Corp. v. Men's International Professional Tennis Council*, 857 F.2d 55, 74 (2d Cir.1988). For example, in *Volvo North America*, the Second Circuit vacated dismissal of a claim for tortious interference with prospective business relations. *Id.* at 79. It emphasized that the "requisite interference" with the plaintiff's prospective relations with third parties had been alleged; this included such acts as directing intimidating letters and threats of punitive action to producers of tournaments that might otherwise have allowed the plaintiff to sponsor their events. *Id.* at 74–75. Here, in contrast, Miglin alleges no actions taken towards third parties by Gottex, and therefore this claim must be dismissed.

### H. Unjust Enrichment

■ Next, Miglin's claims for recovery based on unjust enrichment must fail since this equitable theory requires a showing that the defendant somehow benefitted from the plaintiff's performance. *Dolmetta v. Uintah National Corp.*, 712 F.2d 15, 20 (2d Cir.1983). Miglin has not alleged that any gain resulted to Gottex from the brief existence of the sun-care product line. Gottex did not receive royalties for the use of its name, it has not made any use of the product and marketing designs developed by Miglin, and Miglin has not alleged any facts to support an inference that the troubled association between the two companies somehow boosted Gottex's reputation.

### I. Quantum Meruit

■ Finally, Miglin's claim for restitution based on a theory of quantum meruit

must also fail since quantum meruit requires "that the defendant must have received the plaintiff's performance." *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 506, 465 N.Y.S.2d 917, 920, 452 N.E.2d 1245, 1248 (1983). In *Farash* the New York Court of Appeals explained "receipt" by stating: " '[i]f what the plaintiff has done is part of the *agreed exchange*, it is deemed to be "received" by the defendant.'" *Id.* at 506, 465 N.Y.S.2d at 920, 452 N.E.2d at 1248 (quoting Calamari and Perillo, *Contracts* § 15–4, at 574 (2d ed. 1977)) (emphasis added). Here, Miglin does not allege that Gottex received anything that was part of an agreement with Miglin, such as, for example, the royalties that were part of the license agreement. Accordingly, summary judgment is granted in favor of Gottex on the quantum meruit claim.

*Conclusion*

For the foregoing reasons, Gottex' motion for summary judgment is granted with regard to the breach of contract, tortious interference, unjust enrichment, and quantum meruit claims. Summary judgment is denied as to Miglin's promissory estoppel and fraud claims.

SO ORDERED.