**In re BEECHE SYSTEMS CORP., Debtor.**

**BEECHE SYSTEMS CORP., Plaintiff–Appellee,**

v.

**D.A. ELIA CONSTRUCTION CORP., Defendant–Appellant.**

**No. 92–CV–1659(FJS).**

United States District Court, N.D. New York.

Jan. 24, 1994.

**14**

Saperston, Day Law Firm, Buffalo, NY, for defendant-appellant; Raymond L. Fink, of counsel.

DeGraff, Foy Law Firm, Albany, NY, for plaintiff-appellee; Robert J. Rock, of counsel.

### MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### I. Background

In November 1990, appellant D.A. Elia Construction Corp. ("Elia") submitted a bid to the New York State Thruway Authority ("Thruway Authority") to provide materials and perform services in connection with a pier rehabilitation project at the Castleton Bridge (the "project"). As part of its bid, Elia allocated $62,000 as an estimate for its cost in obtaining scaffolding equipment necessary to access the bridge. Elia was awarded this contract in December 1990. Elia contracted with appellee Beeche Systems Corp. ("Beeche") to provide this scaffolding equipment (the "contract") because Beeche had provided a similar scaffolding system to another contractor who had performed work for the Thruway Authority on the same bridge one year earlier. The parties eventually agreed that Elia would purchase the scaffolding from Beeche at a cost approximately twice its rental value, and that Elia had the right to require Beeche to repurchase the scaffolding system at 50% of the contract cost.

On January 9, 1991, Elia executed a purchase order with Beeche regarding this equipment for a purchase price of $117,810.00. Under the terms of such agreement, 12½% of this price was to be paid by Elia upon execution of the agreement, with the balance due 15 days after delivery of the system and acceptance of the equipment by the Thruway Authority.

On January 15, 1991, apparently unbeknownst to Elia, Beeche filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code (the "Code"). This filing for relief was allegedly precipitated by the Internal Revenue Service's commencement of enforcement proceedings against Beeche to recover purportedly delinquent taxes.

After several delays by Beeche in submitting design proposals to the Thruway Authority regarding the scaffolding equipment, Elia's project manager sent Beeche a letter dated February 28, 1991 that demanded that Beeche comply with the terms of the parties' agreement and advised Beeche that it may be liable for backcharges if it failed to perform in accordance with the agreement. Beeche in turn demanded a modification of the agreement. Under the terms of this modification, Beeche was entitled to accelerated payments regarding the scaffolding apparatus. Even though Elia allegedly viewed Beeche's proposal as "extortion," Elia agreed to these modifications and to accelerated payment under the contract. Thereafter, the value of this contract was subsequently increased to $138,518.22 in April 1991, reflecting change orders requested by Elia.[1]

On April 2, 1991, Beeche provided Elia with the scaffolding equipment in accordance

---

1. The modifications to the contract in March and April 1991 in no way affected Elia's rights to resell the equipment or the repurchase price of the equipment.

with the modified contract and as directed by Elia. On May 7, 1991, Elia acknowledged receipt of the equipment purchased and indicated that it would pay the balance due on the equipment in 15 days. Shortly after sending this letter, Elia claims that it became aware, for the first time, of Beeche's status as a party in bankruptcy.

Elia claims that on June 4, 1991, due to Beeche's failure to disclose the fact that it had filed for bankruptcy and Beeche's delays in submitting design proposals to the Thruway Authority, it determined that Beeche had acted in bad faith and that there were serious questions raised about Beeche's ability or willingness to comply with its contractual obligations. Therefore, rather than pay Beeche the $46,913.48 balance due under the contract, Elia sent Beeche a letter demanding that Beeche repurchase the scaffolding equipment for $69,259.11—50% of the purchase price. Elia also determined that it had the right to either set-off or recoup the $46,913.48 which it owed Beeche against Beeche's $69,259.11 obligation to repurchase the scaffolding system.

By letter dated July 22, 1991, Beeche demanded final payment from Elia under the contract and the return of the scaffolding equipment.

On March 27, 1992, Beeche commenced a suit to compel Elia to turn over the scaffolding equipment and pay the balance due under the contract, plus consequential damages. Elia's answer to such complaint contained a counterclaim which sought judgment in the sum of $69,259.11 against Beeche, with interest.

On September 3, 1992, this matter was tried before Chief Judge Mahoney of the U.S. Bankruptcy Court for the Northern District of New York. In his decision dated November 6, 1992, Judge Mahoney ordered Elia to turn the scaffolding equipment over to Beeche and denied Beeche's further claim for damages. That court also determined that Elia's claim with respect to the buy-back provision in the contract had been forfeited by Elia by its own actions. *See* Memorandum–Decision of the Bankruptcy Court (11/6/92) ("Mem.") at 6. The instant appeal was filed on November 17, 1992.

In its appeal, Elia argues that Beeche's insolvency and subsequent bankruptcy filing, as well as its failure to disclose such bankruptcy or to offer adequate assurance of performance constituted an anticipatory breach of the contract under the Uniform Commercial Code ("U.C.C.") as adopted by New York. It also argues that it was entitled to either offset or recoup the amount due Beeche under the contract with the amount Beeche owed Elia under the buy-back provision of the contract. It next contends that Beeche's failure to disclose its insolvency at the time of the contracting constituted fraud requiring rescission of the agreement. Elia further argues that the Bankruptcy Court improperly required Elia to turn over the scaffolding equipment without requiring Beeche to fully perform its repurchase obligation. Finally, Elia contends that Judge Mahoney "manifested a judicial intolerance and hostility towards Elia" which colored the lower court's decision against Elia.

Beeche argues that the Bankruptcy Court's decision should be affirmed, however it claims that it is entitled to the damages sought in its complaint, or that, at a minimum, Elia should be required to assure Beeche that the scaffolding equipment is in good working order at the time Elia turns over the equipment.

## II. Discussion

(a) Anticipatory repudiation.

(i) Under U.C.C. § 2–610.

Elia claims that Beeche's insolvency and subsequent bankruptcy constituted an anticipatory repudiation of the contract under U.C.C. § 2–610. This statute provides, in part, that:

> When either party repudiates a contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may:
>
> .  .  .  .  .
>
> b. resort to any remedy for breach even though he has notified the repudi-

ating party that he would await the latter's performance and has urged retraction; and

c. in either case *suspend his own performance* ...

(Emphasis added).

Elia argues that Beeche's acts and omissions regarding its filing of bankruptcy and failure to disclose same to Elia "reasonably indicated a rejection of the agreement to the extent of the repurchase obligation entitling Elia to withhold payment as contemplated within U.C.C. § 2–610." [2] Elia further contends that Beeche's failure to assume this contract under § 365 of the Code constituted an "unequivocal rejection of the agreement." [3]

▮▮▮ However, pursuant to 11 U.S.C. § 365, Beeche, as a debtor, had the authority to assume or reject its executory contract with Elia regarding the scaffolding equipment.[4] If the mere filing of bankruptcy constituted an anticipatory breach of contract, this decision by the trustee to assume or reject a contract could never be reached, thereby rendering meaningless this provision of the Bankruptcy Code. The mere fact that Beeche was in bankruptcy and failed to disclose this fact to Elia does not amount to an anticipatory repudiation of the contract. In fact, Elia's argument that such conduct amounted to an anticipatory repudiation in the present case is particularly puzzling since Beeche had already provided Elia with the scaffolding equipment and was not obligated to buy back this system until it had received final payment from Elia. Moreover, Beeche was not required to assume or reject the subject contract prior to confirmation of the plan of reorganization, which did not occur in the instant case until November 1992. *See* 11 U.S.C. § 1123(b)(2). Therefore, Elia's argument that Beeche's failure to assume such contract prior to the filing of this plan constituted a rejection of the agreement is without merit.

(ii) Under U.C.C. § 2–609.

Elia alternatively argues that Beeche's failure to disclose its bankruptcy, or to offer adequate assurances of performance, constituted an anticipatory breach of the contract under U.C.C. § 2–609(1). This provision provides, in salient part, that:

When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurances of due performance and until he receives such assurance may, if commercially reasonable, suspend any performance for which he has not already received the agreed return.

This section continues by stating that:

After receipt of a justified demand, failure to provide within a reasonable time not exceeding thirty days, such assurances of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

U.C.C. § 2–609(4).

Elia contends that it had "reasonable grounds for insecurity" because Beeche had filed for bankruptcy within one week of executing the original agreement and had failed to disclose the existence of the bankruptcy filing to Elia. It claims that it was "gravely concerned" about this bankruptcy, especially in light of the modification of the agreement, which required accelerated payments to Beeche.[5] It then contends that a letter it sent Beeche dated June 4, 1991 constituted the demand for adequate assurances required under U.C.C. § 2–609(1).

▮▮ However, Beeche had already designed, constructed and provided Elia with the scaffolding equipment (albeit with some delays regarding the submission of designs), all during a time when Beeche was in bankruptcy. Had Beeche failed to provide Elia with such equipment in time for the appellant to utilize same while working on its project

---

2. Appellant's brief at 10–12.

3. *Id.* at 13.

4. 11 U.S.C. § 365(a) provides, in part, that, with certain exceptions not relevant here, "the trustee, subject to the court's approval, may assume or reject any executory contract ... of the debtor."

5. Appellant's brief at 16.

with the Thruway Authority, then Elia may have had reasonable grounds for insecurity regarding Beeche's ability to continue its performance under the contract. However, since Beeche had already performed all that was required of it under the agreement until it had received final payment from Elia, and had never given any indication that it did not intend to honor the buy-back provision of the contract, this court finds that there were no reasonable grounds for insecurity sufficient to trigger the provisions of U.C.C. § 2–609(1).

██ Moreover, the letter sent by Elia to Beeche dated June 4, 1991 that Elia claims constituted the demand for adequate assurances required under the U.C.C. does not appear to this court to be such a demand. This letter makes no reference to the U.C.C., does not track the language of U.C.C. § 2–609(1), nor does it request that Beeche provide Elia with any assurance of performance. Rather, this letter reiterates that Elia wanted Beeche to repurchase the scaffolding equipment, states that Elia was "concerned" about Beeche's financial ability to do same, and that, in order to secure such performance, it had determined that it would set-off the amount it still owed Beeche under the agreement ($46,913.48) as a "prepayment of the aforementioned buy back." Rather than being a request for adequate assurances, this court finds that this letter constituted a statement of what Elia had determined it would do with respect to the balance due under the contract and the exercise of the buy-back provision.

In light of the foregoing, this court concludes that Elia could not reasonably conclude that Beeche had anticipatorily repudiated the contract under either U.C.C. § 2–609 or § 2–610.

(b) Elia's claim that it was entitled to an offset.

██ Elia also claims that it was entitled to offset the amount it owed Beeche under the

contract by the amount Beeche was required to expend in repurchasing the scaffolding system from Elia.

The Bankruptcy Court had determined that the obligations of Elia and Beeche were both post-petition obligations. It found that Elia's debt to Beeche, although stemming from a pre-petition contract, did not arise until after the commencement of the case, and that Beeche's liability to Elia was also post-petition. Dec. at 5.

This court finds that the debt of Elia to Beeche occurred *pre-petition* while the obligation of Beeche to Elia could not have arisen until *post-petition.* Elia became obligated to pay the purchase price of the scaffolding equipment upon entering into the subject contract, therefore this debt arose *pre-*petition.[6] Beeche's indebtedness to Elia could only come about if Beeche provided the scaffolding equipment to Elia, Elia paid Beeche in full for same, and Elia thereafter exercised its option to sell the equipment back to Beeche. Thus, such obligation was *post-*petition.

Since Elia's debt to Beeche was pre-petition, the filing of Beeche's petition of bankruptcy resulted in an automatic stay of the set-off of the debt, thereby depriving Elia of the right of set-off. *See* 11 U.S.C. § 362(a) (petition filed under Chapter 11 "operates as a stay, applicable to all entities, of . . . (7) the set-off of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor . . .").[7]

(c) Elia's claim that it was entitled to a recoupment.

Elia alternatively argues that "Elia's setoff was in the nature of recoupment" that was "unaffected by Beeche's bankruptcy."[8]

---

**6.** *See* 11 U.S.C. § 101(14) (defining "debt" as "liability on a claim"); 11 U.S.C. § 101(5)(A) (defining "claim" as, *inter alia,* an "unmatured right to payment").

**7.** The court notes that as a consequence of this determination regarding the timing of Elia's debt

to Beeche, the provisions of Section 553 of the Bankruptcy Code, which applies to mutual pre-petition debts, is inapplicable.

**8.** Appellant's brief at 22.

**18**

■ In discussing the doctrine of recoupment in the bankruptcy context, the court in *In re University Medical Center*, 973 F.2d 1065 (3rd Cir.1992) noted that:

> The Bankruptcy Code does not contain a recoupment provision. The common law doctrine of recoupment provides an exception to setoff in bankruptcy cases. Recoupment "is the setting up of a demand *arising from the same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 *COLLIER ON BANKRUPTCY* § 553.03 at 553–15–17 (emphasis added). This doctrine is justified on the grounds that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984). Thus, so long as the creditor's claim arises out of the identical transaction as the debtor's, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by Code section 553. *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir.1990). In the bankruptcy context, recoupment has often been applied where the relevant claims arise out of a single contract "that provides for advance payments based on estimates of what ultimately would be owed, subject to later correction." *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986).

*In re University Medical Center*, 973 F.2d at 1079–80. New York similarly recognizes the doctrine of recoupment as a remedy distinct from set-off that enables a defendant to reduce the amount of a plaintiff's claim by asserting a counterclaim that arises out of the same transaction as plaintiff's claim. *See In re Integrated Resources, Inc.*, 157 B.R. 66, 73 (S.D.N.Y.1993).

■ In the present case, Elia's claim against Beeche clearly arises out of the same transaction that gives rise to Beeche's claim against Elia. Therefore, despite the fact that Beeche was in bankruptcy, Elia was entitled to recoupment on its claim against Beeche and to deduct from the balance it owed Beeche the amount that Beeche was required to repay Elia for the repurchase of the scaffolding equipment. Since Elia had this right of recoupment, it did not breach the terms of the contract by failing to make the final payment under the agreement, nor did Elia's conduct discharge Beeche from its obligation to repurchase the scaffolding equipment as is required under the terms of the contract.

(d) Elia's claim that Beeche's conduct amounted to fraud.

■ Elia also contends that Beeche's failure to disclose its insolvency and/or bankruptcy at the time of contracting constitutes fraud entitling Elia to rescind the contract. This argument is based upon Elia's contention that Beeche was aware that it was insolvent at the time of the making of the agreement. In its brief, Elia notes that proof of fraud requires the misrepresentation of a material fact, and cites as support for its position that Beeche committed fraud in the instant action a case that states that fraud occurs in the context of the sale of goods where a party that knows it is "hopelessly insolvent" enters into a contract "knowing that payment can never be made."[9] It also cites cases that state that a party alleging fraud must establish knowledge on the part of a debtor that it is insolvent at the time of the making of the contract coupled with an intent not to pay for the goods.[10]

However, the evidence before the court indicates that Beeche was unaware of the bankruptcy filing at the time it executed the contract with Elia.[11] Moreover, Elia has come forth with no evidence that indicates that Beeche did not intend to honor the repurchase agreement, either at the time it

---

**9.** Appellant's brief at 28 (citing *Rochford v. New York Fruit Auction Co.*, 116 F.2d 584, 585 (2d Cir.1940)).

**10.** Appellant's brief at 28–29.

**11.** *See* Appellee's brief at 8–9 and citations to the transcript below contained therein.

entered into the contract or subsequent to the modifications to same. Additionally, any claim of misrepresentation on the part of Beeche must fail because there is no evidence that Beeche misrepresented a material fact known to it to be false for the purpose of inducing Elia to rely upon such fact to Elia's detriment—an essential element to such a claim. *See Marilyn Miglin, Inc. v. Gottex Industries, Inc.,* 790 F.Supp. 1245, 1253 (S.D.N.Y.1992) (citations omitted). Thus, Elia is not entitled to rescind the contract on Elia's theory that Beeche engaged in fraudulent conduct.

(e) Elia's claims of judicial misconduct.

Finally, after reviewing the transcript of the proceedings below, this court finds that Chief Judge Mahoney did not evidence hostility towards Elia, nor does it appear to this court that Chief Judge Mahoney was prejudiced, in any way, against Elia. Thus, Chief Judge Mahoney's decision cannot be modified based upon appellant's theory that the Bankruptcy Court engaged in such conduct.

*III.   Conclusion*

The holding of the Bankruptcy Court is modified in the following manner: Elia is required to turn over the scaffolding equipment to Beeche within 30 days from the date of this order. Beeche is required to pay to Elia $22,345.63—the balance due Elia under the repurchase portion of the contract after taking into consideration Elia's $46,913.48 recoupment regarding the balance owed Beeche under the contract. The Bankruptcy Court's decision in all other respects is affirmed.

Neither party is entitled to any interest or further damages, and each party is to bear its own costs, fees and expenses in bringing the instant appeal.

IT IS SO ORDERED.