MARJORIE L. EVERETT et al., Respondents, *v.* MILTON GROSS et al., Appellants.

First Department, December 17, 1964.

*Morris B. Abram* of counsel (*Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellants.

*James J. Hagan* of counsel (*William J. Manning* and *Walter J. Josiah, Jr.,* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for respondents.

STEUER, J. The complaint is in libel and stems from a column written by the individual defendant and published in the *New York Post*. Briefly, the article describes an incident following the running of a horse race at Arlington Park in Arlington Heights, Illinois. It is stated in the article that, following the

race, a claim of foul was made to the stewards. The stewards tentatively decided to uphold the claim by a vote of 2 to 1, subject to a review of the films of the race. While the stewards were so engaged the article states that the individual plaintiff, Mrs. Everett, came into the stewards' room and informed them that the result of the race would have to stand, that is, the claim of foul must be disallowed. And she threatened that any steward who voted to uphold the claim would lose his position. It is further stated that one steward who voted to uphold the claim resigned forthwith.

The complaint contains two causes of action, the first on behalf of Mrs. Everett, and the second on behalf of Chicago Thoroughbred Enterprises, Inc. The defendants have moved to dismiss the second cause of action for a failure to state sufficient facts. In addition to setting out the article and alleging its falsity, the complaint states that the corporate plaintiff, through a division known as the Arlington Park Jockey Club, owns and operates the race track at Arlington Heights. It also alleges that Mrs. Everett is the president, a director and the majority stockholder of the corporate plaintiff and the head of Arlington Park Jockey Club. No special damages are pleaded.

The article complained of does not mention the corporate plaintiff, nor does it give any indication for whom, if anyone besides herself, Mrs. Everett was acting at the time. The test of the effect of a publication is what it means to the ordinary reader (*Mencher* v. *Chesley*, 297 N. Y. 94, 100; *Sydney* v. *Macfadden Newspaper Pub. Corp.*, 242 N. Y. 208, 214; 1 Seelman, Law of Libel in New York [Rev. ed.], pars. 162–164, pp. 201–205). In order to form any adverse opinion of the corporate plaintiff a reader would have to be aware of several things dehors the publication complained of. He would first have to know that the corporate plaintiff owns and operates Arlington Park race track. This is not a fact lightly to be assumed, as the track is apparently operated under a different name and the knowledge would have to embrace the fact that the Jockey Club was a unit of the operator. The reader would also have to be aware of Mrs. Everett's connection with the corporate plaintiff. But, more important than either of these considerations, he would have to assume that Mrs. Everett was at the time either acting in her capacity as a corporate officer or at least at the corporation's instance. To make even a prima facie showing in this respect it would be important to know whether the stewards are employees of the race track, whose employment is subject to the will of the track's operator, or officials in the employ of the State or some independent racing organization.

While it may not be an extraordinary assumption on the part of a reader who is told that a corporate officer threatens a corporate employee with discharge unless he does a certain thing to assume that the officer is acting for the corporation, it is a far different matter where the person threatened is not an employee. Under such circumstances the threat is that the speaker will cause the employee to be discharged. And this he might do in his personal capacity. We doubt whether under those circumstances the ordinary reader would infer that it was the corporation who was making the threat.

We conclude that, standing alone and without innuendo, the article is not actionable by the corporate plaintiff. Plaintiff concedes that an article not on its face libelous but only becoming so through the instrumentality of an innuendo requires a pleading of special damage. But plaintiff argues that what is necessary here is merely to identify the plaintiff, to show that what was written was written concerning it. And this plaintiff claims requires no pleading of special damage. To an extent this is true. If the plaintiff is sufficiently described in the libelous publication to be identified, he need not be named by name (*Weston* v. *Commercial Advertiser Assn.*, 184 N. Y. 479). Here the distinction goes deeper. If the article spoke of the operator or owner of the track without naming it, a pleading alleging that the corporate plaintiff was the owner would not require special damages. Here explanation is needed not only to show that the libelous matter was written about the owner, but also that it was libelous as to it. Under such circumstances, special damage is a necessary element (see *Tracy* v. *Newsday, Inc.*, 5 N Y 2d 134; *Gurtler* v. *Union Parts Mfg. Co.*, 1 N Y 2d 5; *O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352).

Order denying motion to dismiss second cause of action should be reversed on the law and motion should be granted, with costs, with leave to plaintiff to replead alleging special damages.

Botein, P. J., Rabin, McNally and Eager, JJ., concur.

Order, entered on June 24, 1963, denying motion to dismiss second cause of action, unanimously reversed on the law, with $30 costs and disbursements to appellants and the motion granted, with $10 costs, with leave to plaintiff to replead alleging special damages.