Roy M. Cohn et al., Respondents-Appellants, v National Broadcasting Co., Inc., et al., Appellants-Respondents, et al., Defendant.

First Department, April 5, 1979

## APPEARANCES OF COUNSEL

*John C. Sabetta* of counsel *(Susan M. Campbell* with him on the briefs; *Townley & Updike,* attorneys), for appellants-respondents.

*Roy R. Kulcsar* of counsel *(John F. Lang* and *Michael J. Cacace* with him on the briefs; *Lang & Nesci, P. C.,* attorneys), for respondents-appellants.

**OPINION OF THE COURT**

FEIN, J.

Defendants appeal from so much of an order as denied a motion by National Broadcasting Co., Inc., and Universal City Studios, Inc., to dismiss the first cause of action alleged in plaintiffs' amended complaint or, in the alternative, to direct plaintiffs to separately state and number. Plaintiffs cross appeal to the extent that Special Term granted the motion dismissing the second cause of action and striking paragraphs 13, 21(e) 22(c) and 23 of the amended complaint.

The action, sounding in defamation and invasion of privacy, seeks damages resulting from the production by Universal of a film entitled "Tail Gunner Joe" and the exhibition of that film by NBC on February 6, 1977. Plaintiffs contend that the film, portraying the era of the late Senator Joseph McCarthy, held them up to public ridicule and injured their reputation. Plaintiff Cohn, a member of the law firm Saxe, Bacon & Bolan, had served in the early 1950's as chief counsel to the Investigations Subcommittee of the Senate Government Operations Committee, chaired by Senator McCarthy. Plaintiff Schine was chief consultant to the subcommittee.

Special Term, in a scholarly opinion, set forth the historical events underlying the portrayals in the film and reviewed the applicable law in determining whether the pleaded allegations of the complaint stated actionable claims. We agree with Special Term that the second cause of action for invasion of privacy under sections 50 and 51 of the Civil Rights Law fails to state a cognizable claim for relief. Plaintiffs Cohn and Schine claim that the use of their names in advertising the film and in having actors portray them against their wishes constituted an invasion of privacy. As found by Special Term, the subject of the film remains a matter of public interest. In the absence of allegation and proof that the advertising was false and published with knowledge of its falsity or with reckless disregard of the truth, or that the selection of actors to portray Cohn and Schine was done in such manner as to be defamatory, no actionable cause is stated pursuant to the Civil Rights Law under the circumstances of this case. (Spahn v Julian Messner, Inc., 21 NY2d 124.)

However, we disagree with Special Term's conclusion that the reference in the first cause of action to the "book-burning scene" relating to McCarthy's attempt to purge

American overseas information libraries of certain books by well-known American authors is sufficient to sustain that cause of action, on the face of the pleading.

Although the quoted dialogue refers to Cohn and Schine, we disagree with Special Term's finding that it is susceptible of libelous meaning because a jury might find that an "ordinary observer of the film would conclude that they [Cohn and Schine] were among the book burners." The only reference to Cohn and Schine in this segment is that "they hit the road and went to Europe and they discovered [laughter] you're not going to believe this, they discovered some of the authors carried in our overseas libraries—this is really awful—well they were also available in some Soviet Information centers. I mean like Mark Twain. Mark Twain. The Soviets had Mark Twain." Plaintiffs do not deny that they made the European trip and discovered the placement of the books.

Elsewhere in the segment there is a reference to the burning of books by "American Civil Servants", in one case at the "American Embassy in Sydney, Australia." There is no suggestion that Cohn or Schine participated in or were present at this or any other book burning. Plaintiffs do not deny that some book burnings occurred.

The narrative also quotes Sentator McCarthy as having stated that "our oveseas libraries contained some 30,000 subversive volumes, paid for, of course, by the American taxpayer." This remark is not attributed to plaintiffs who do not deny it was made. There is no basis here for a finding that the plaintiffs were among the book burners or participated in a campaign to burn books. Moreover there is no assertion by plaintiffs that any of the factual statements in the segment are untrue. It cannot be reasonably concluded that plaintiffs are charged with participating in a campaign to burn books.

To the extent that the film suggests plaintiffs may have some political responsibilities for the character and consequences of the investigation of the overseas libraries, and the climate which occasioned book burnings, it is not actionable in the absence of proof of falsity in reporting the facts on which the conclusion is based. "Opinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions, provided [as here] that the facts supporting the opinions are set forth." *(Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 380, cert den 434 US 969.)

Plaintiffs also contend that this segment is defamatory

because it is slanted and distorted in that (1) some of the authors and books referred to were not mentioned in the hearings or in the reports on the investigation; and (2) the film did not disclose the purchase and use in the libraries of books by known Communists or Communist supporters or by persons who were identified as having been involved or implicated in Soviet espionage. Apparently the complaint is that there is lack of a balanced presentation or the omission of balancing facts. However this is essentially a matter of editorial judgment and not actionable *(Columbia Broadcasting System v Democratic Committee,* 412 US 94, 120, 121).

Our review of the complaint compels the finding that, as to Cohn and Schine, there is no actionable libel as a result of the passages complained of in the film. The fact that both were involved with McCarthy and with the subcommittee hearings does not give rise to a derivative claim as a result of the portrayal of McCarthy in the film. Even assuming as true plaintiffs' assertion that the film unnecessarily distorted McCarthy's career and was unmistakably disparaging to the late Senator, this would not give rise to a claim for defamation by plaintiffs as his former aides and advisors.

■ ■ Moreover, were the film found to be defamatory, which it was not, both Cohn and Schine clearly were public figures within the purview of *New York Times Co. v Sullivan* (376 US 254). Therefore, the publication was legally protected by a qualified privilege " 'unless [plaintiff] proves that the publication was made with actual malice, that is, with knowledge that it was false or with reckless disregard as to whether it was false or not' * * * [that is with] the 'intent to inflict harm through falsehood' " *(Silbowitz v Lepper,* 32 AD2d 520-521). Reckless conduct may be shown by proof that the publisher "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *(Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199.) It may also be demonstrated by "a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" *(Curtis Pub. Co. v Butts,* 388 US 130, 155); or by a "high degree of awareness of * * * probable falsity" *(Garrison v Louisiana,* 379 US 64, 74). The subject matter of the film was also a matter of public interest, requiring proof of actual malice to sustain the action *(Rosen-*

*bloom v Metromedia,* 403 US 29). The fact that both Cohn and Schine have returned to private life does not, in any way, mitigate their burden of demonstrating actual malice to sustain a cognizable claim for libel (see *Gertz v Robert Welch, Inc.,* 418 US 323). So far as appears there is no showing of falsity and no showing that the film was composed and thereafter exhibited with actual malice. The general conclusory assertion that it was maliciously published is insufficient. Nor is the complaint at all sufficient in setting forth special damages, as required, where the words are not libelous per se. There is not even the barest showing that Cohn or Schine was actually damaged as a result of the film. So far as appears, Cohn, at least, has openly used his prior association with the late Senator McCarthy to his personal gain.

■ Finally, the amended complaint fails to state a cause of action on behalf of Cohn's law firm, Saxe, Bacon & Bolan. It does not complain of or seek recovery for any defamatory portrayal or utterance directed against it. The law firm was never mentioned during the course of the film. The fact that Cohn, as a member of the firm, seeks recovery for an alleged defamatory work, cannot give rise to a derivative claim on behalf of his employer or partners in the firm, upon mere conclusory assertion that the reputation of the firm is inextricably tied to Cohn as its principal producer of income. No such derivative claim for defamation exists. Moreover, even assuming that there was defamation, which there was not, the law firm, as a professional corporation, must establish that the libel directly affected its credit and resulted in pecuniary injury or loss. This requires sufficient allegations of special damages which are clearly lacking here (see *New York Bur. of Information v Ridgway-Thayer Co.,* 193 NY 666, revg on the dissenting opn of Justice INGRAHAM in 119 App Div 339, 342; *Everett v Gross,* 22 AD2d 257).

Accordingly, the order, Supreme Court, New York County (BLOOM, J.), entered March 13, 1978, granting the motion of defendants National Broadcasting Co., Inc., and Universal City Studios pursuant to CPLR 3211 (subd [a], par 7), dismissing the second cause of action and striking paragraphs 13, 21(e), 22(c) and 23 of the amended complaint, but denying the branch of the motion to dismiss the first cause of action, should be modified, on the law, to grant the motion to dismiss the first cause of action, and otherwise affirmed, without costs or disbursements on the appeal.

BIRNS, J. P., SANDLER and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on March 13, 1978, modified, on the law, to grant the motion to dismiss the first cause of action, and otherwise affirmed, without costs and without disbursements.