Katrina **MURPHY** and John Murphy, Plaintiffs,

v.

**CADILLAC RUBBER & PLASTICS, INC.,** Cadillac, Michigan; Cadillac Rubber & Plastics, Inc., Lockport, New York; Cadillac Rubber & Plastics Injected Rubber Products Division, Albion, New York; Richard Gifford, Individually and as Plant Manager; Ralph Johnson, Individually and as Third Shift Supervisor; Karen Ward, Individually and as Quality Supervisor, Defendants.

No. 95–CV–422H.

United States District Court, W.D. New York.

Nov. 21, 1996.

Emmelyn Logan–Baldwin, Rochester, NY, for Plaintiffs.

Charles S. Carra, Damon & Morey L.L.P., Buffalo, NY, for Defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Pending for decision are defendants' motions under Rule 12(b)(6) to dismiss all claims asserted in the complaint by plaintiff John Murphy, and to dismiss three of six claims asserted by plaintiff Katrina Murphy (Items 5 and 18). Also pending is plaintiffs' motion to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure (Item 27). For the reasons set forth below, defendants' motion to dismiss should be granted in part and denied in part, and plaintiffs' motion to amend should be denied.

### PROCEDURAL HISTORY

Plaintiffs filed their original complaint on May 31, 1995 (Item 1). They allege sexual and marital discrimination and retaliatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, *et seq.*, the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York Civil Rights Law § 40(c). In addition, plaintiffs claim violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*, and loss of services (*Id.*).

On July 5, 1995, defendants moved to dismiss all claims asserted by plaintiff John Murphy for failure to state a claim upon which relief could be granted (Item 5). Defendants moved to dismiss the Family and Medical Leave Act and loss of services claims of plaintiff Katrina Murphy on the same ground (*Id.*).

On September 11, 1995, plaintiffs filed an amended complaint as a matter of right, adding a claim for defamation on behalf of both plaintiffs (Item 13). On that same date, plaintiffs also filed three affidavits in response to defendants' motion to dismiss (Items 8, 9 & 11).[1]

Defendants filed a supplemental motion to dismiss the amended complaint on September 25, 1995, seeking dismissal of all claims identified in their first motion and the newly alleged defamation claims (Item 18). In addition, defendants argued that the affidavits filed by plaintiffs on September 11, 1995 are factual matters outside of the amended complaint that cannot be considered in ruling on a motion to dismiss under Rule 12(b)(6). They asked that the court exclude the affidavits and consider the motion to dismiss solely on the pleadings (*Id.*).

On October 2, 1995, plaintiffs again submitted their own affidavits in response to defendants' supplemental motion to dismiss (Items 21 & 22). Later that month, on October 27, plaintiffs filed a second amended complaint without obtaining defendants' consent or a court order as required by Rule 15(a). After defendants refused to accept the amended pleading, plaintiffs filed a motion to amend on January 8, 1996. Plaintiffs' proposed amendments add statements to the factual allegations and incorporate eight exhibits into the pleadings by reference. The exhibits include: the plaintiffs' affidavits, sworn to on September 11, 1995 and October 2, 1995; James Lavin's affidavit, sworn to on September 11, 1995; plaintiffs' attorney's affirmation, dated September 11, 1995; and two exhibits that were appended to the first amended complaint.

### BACKGROUND

In making its determinations on plaintiffs' motion to amend under Rule 15(a) and defendants' motions to dismiss under Rule 12(b)(6), this court must accept as true the facts alleged by the plaintiffs. The following summary of facts is adopted from plaintiffs' first amended complaint (Item 13). Any additional facts asserted in the proposed amended complaint will be addressed in the discussion of plaintiffs' motion to amend.

Plaintiffs are husband and wife (Item 13, ¶ 4). Plaintiff Katrina Murphy (KM), a white

---

1. The affidavits were from plaintiff Katrina Murphy, plaintiff John Murphy, and James Lavin, an employee and union representative at plaintiffs' place of employment.

female, began working for defendants as a press operator on January 14, 1993 (*Id.* ¶¶ 3, 13). KM was promoted to quality control inspector on or about April 12, 1993 (*Id.* ¶ 13). Plaintiff John Murphy (JM), a white male, was hired by defendants as a press operator in or around June 1991 (*Id.* ¶¶ 4, 14). Plaintiffs both worked at the Albion Plant of Injected Rubber Products, Inc., Division of Avon North America, Inc., a/k/a Cadillac Rubber & Plastics (*Id.* ¶¶ 5, 7).

In February 1994, defendant Gifford became Albion plant manager and one of plaintiffs' supervisors (*Id.* ¶¶ 7, 15). Defendant Johnson was hired as third shift supervisor in or about April 1994 (*Id.* ¶ 15).

Beginning in April 1994, defendant Johnson verbally abused and harassed plaintiff KM at work (*Id.* ¶ 17). For example, on one occasion he asked plaintiff KM if she was "on the rag" and on another he attempted to strike her on the buttocks with a rubber gasket (*Id.* ¶¶ 35, 18). Defendant Johnson also criticized plaintiff KM's job performance to other employees, stated that plaintiff KM was a "bitch" and "on the rag," and suggested that plaintiff KM was gay when she is not (*Id.* ¶¶ 17, 23, 34, 36).

In April 1994, plaintiff KM, with plaintiff JM's assistance, sought to return to her union press operator job. Defendant Gifford refused her request (*Id.* ¶¶ 20, 21).

In May 1994 and thereafter, plaintiff KM complained to her supervisor, defendant Ward, about her treatment. In response, defendant Ward told KM she was being a "baby" and was "too young" for her job (*Id.* ¶ 24). Plaintiff JM assisted and supported plaintiff KM in her complaints of discrimination and alleges that defendants knew of his assistance (*Id.* ¶¶ 21, 44).

In or about July 1994, plaintiff KM again requested a return to her press operator job and was denied (*Id.* ¶ 25). Plaintiff KM also made several requests to transfer to first shift that were denied (*Id.* ¶ 26).

Plaintiff KM states that there is an unwritten corporate rule that entitled her to four paid sick days in 1994. Despite having used only one sick day, she was placed on attendance probation for sixty days in July 1994 (*Id.* ¶ 27).

On August 4, 1994, plaintiff KM experienced severe cramps and pain while at work. She asked defendant Johnson who would take her to the hospital if she got worse, but he did not answer her (*Id.* ¶ 28).

Plaintiff KM was hospitalized and suffered a miscarriage on August 5, 1994 (*Id.* ¶ 29). She continued under the care of her doctor for the miscarriage (*Id.*). Despite having used only one day of paid sick leave, defendants denied plaintiff KM her remaining sick time because she had been late on some occasions. Plaintiff KM states that she had already made up all lateness (*Id.* ¶ 32). On August 8, plaintiff requested an additional week of unpaid sick leave and was denied (*Id.* ¶ 33). Plaintiff KM alleges that she was an eligible employee under the Family and Medical Leave Act of 1993 (FMLA) and that her miscarriage constituted a serious health condition (*Id.* ¶ 31).

On November 11, 1994, plaintiff KM took a tape recorder to work to record defendant Johnson's comments (*Id.* ¶¶ 37, 38). Defendant Ward took the recorder from plaintiff's desk. Upon plaintiff KM's request, defendant Ward returned the recorder but kept the tape that was inside (*Id.* ¶ 37).

On November 17, 1994, plaintiff KM was given a letter that characterized her behavior and work performance as unsatisfactory (*Id.* ¶ 39). It stated several conditions that plaintiff was required to meet for her continued employment, including outpatient assessment and providing medical proof of illness for any absence within the following six months (*Id.* ¶ 39). Plaintiff KM was told she must sign the agreement by 4:00 p.m. of the same day in order to retain her job (*Id.* ¶ 40). On the advice of an attorney, plaintiff KM did not sign the letter and she was terminated (*Id.* ¶ 41).

When plaintiff KM sought unemployment benefits, defendants reported that KM left her job voluntarily and she was denied benefits (*Id.* ¶ 42). In November 1994, defendant Ward refused to give plaintiff a letter of reference she had promised (*Id.* ¶ 43).

Plaintiff JM assisted and supported his wife in her complaints of discrimination. Plaintiff JM claims that defendants retaliated against him because of plaintiff KM's complaints (*Id.* ¶ 44). Specifically, defendants falsely told other employees that JM was a slow, lazy and incompetent employee, gave plaintiff JM an unwarranted three-day suspension from work, would not allow plaintiff to place his radio on plant-owned carts though they allowed others to do so, would not allow plaintiff to withdraw his name from the first shift though they allowed others to do so, threatened plaintiff over a minor error in his labor report, and would not allow plaintiff to perform a job that he had experience and seniority for (*Id.* ¶¶ 44(a1), (a2), (b), (c), (d), (e)). Defendant Johnson allegedly told other employees that he wanted to get plaintiff JM in trouble or fired (*Id.* ¶ 44(e)).

In March 1995, plaintiff JM missed a day of work for illness (*Id.* ¶ 44(g)). Plaintiff JM states that it was company practice to allow press operators to make up time (*Id.* ¶ 44(h)). Plaintiff was not allowed to make up the sick time and received a one week suspension without pay (*Id.* ¶ 44(h1)). Defendants did not allow plaintiff to cancel a planned vacation day that fell during his suspension, though they have allowed other employees to cancel planned vacations (*Id.*).

Beginning in November 1994, plaintiff JM was assigned to operate the worst presses (*Id.* ¶ 44(a)). On June 19, 1995, he was assigned to a press that had a dangerous platform arrangement (*Id.* ¶ 44(i)). While working on that press, plaintiff burned his arm pit and face and was taken to a hospital emergency room for treatment (*Id.* ¶ 44(j)). Plaintiff has a permanent facial scar (*Id.* ¶ 44(m)).

On June 22, 1995, plaintiff JM informed defendants that his doctor would not let him return to work for at least ten days. Defendants required a doctor's written excuse (*Id.* ¶ 44(k)). Plaintiff JM's physician gave him a written recommendation that he return to work on July 5, 1995 (*Id.* ¶ 44(*l*)).

On July 3, 1995, plaintiff JM requested an unpaid leave of absence from July to August so he could attend truck driving school (*Id.* ¶ 44(n)). Defendants denied plaintiff's request though it is alleged that unpaid time off was granted to other employees for various reasons (*Id.* ¶ 44(n)). Had plaintiff JM received truck driver training and a particular class of license, he would have been the only plant employee qualified for a new position that defendants were creating at the Albion plant (*Id.* ¶ 44(o)).

Plaintiff JM claims that he was constructively discharged as a result of the constant harassment and retaliation described above. He submitted a letter to defendants on July 6, 1995, stating that defendants' actions forced him to resign (*Id.* ¶ 44(p)).

## DISCUSSION

### I. MOTION TO AMEND.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Plaintiffs in this case have amended their pleading once as of right. The decision whether to grant leave to amend now lies within the discretion of the court. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, as Rule 15(a) indicates, the court should deny such motions sparingly. The Supreme Court has stated the following as reasons for denial: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*

Defendants contend that leave to amend should be denied for two reasons: first, the proposed amendments add nothing of substance that would affect the court's decision on defendants' motions to dismiss, and second, incorporating the proposed exhibits into the complaint would circumvent Rule 12(b) by allowing consideration of matters outside

the pleading. This court will consider defendants' second argument first.

### A. *Consideration of Exhibits to a Pleading.*

██ Plaintiffs offer two arguments to support the consideration of exhibits attached to their proposed amended pleading. First, they rely on Rule 10(c) of the Federal Rules of Civil Procedure, which states, in part, that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

In applying Rule 10(c), the Second Circuit has held that any written instrument presented as an exhibit to a pleading is a part thereof for the purpose of considering a motion to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (holding that it was appropriate to consider stock purchase agreement on motion to dismiss securities fraud action), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (holding that court could not rely on annual report and other corporate documents in securities case unless they were attached to the pleadings or incorporated by reference); *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (annual report that was not attached to amended pleading or incorporated by reference could not be considered). However, to become part of the record, plaintiffs' exhibits must qualify as "written instruments."

A "written instrument" is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement. *See* Black's Law Dictionary 801, 1612 (6th ed. 1990); Webster's Third New International Dictionary, 1172 (1986). In this case, plaintiffs' exhibits include affidavits, an attorney's affirmation, a letter of resignation written by plaintiff JM, and an unsigned letter of agreement from defendants to plaintiff KM regarding conditions of her continued employment. None of these exhibits falls within the commonly held definition of a "written instrument."

Other circuits have held specifically that affidavits are not "written instruments" for purposes of Rule 10(c). *Rose v. Bartle,* 871 F.2d 331, 340 n. 3 (3rd Cir.1989) (citing *Schnell v. City of Chicago,* 407 F.2d 1084 (7th Cir.1969)). To hold otherwise "would blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted." *Rose, supra,* 871 F.2d at 340.

In the Second Circuit cases above, the exhibits incorporated under Rule 10(c) consisted of documentary evidence such as security agreements, corporate reports, or other writings on which the party's action or defense was based. This court can find no decision allowing a plaintiff's own supporting statements to be considered part of the pleadings on a motion to dismiss. Thus plaintiffs' affidavits, the attorney's affirmation, and JM's letter of resignation are not "written instruments" within the meaning of Rule 10(c).

The unsigned letter from defendants proposing conditions for plaintiff KM's continued employment also falls outside of the definition of "written instrument." It is merely a proposal and does not evidence an agreement between the parties. Further, this letter does not form the basis of plaintiff's claims of discrimination and retaliation. Should plaintiffs be allowed to amend their complaint, proposed exhibits A through H will not be considered a part thereof.

Plaintiffs also argue that by attaching an evidentiary exhibit to its motion to dismiss, defendants demonstrated an intent that their motion be one for summary judgment.

"The court's function on a 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman, supra,* 754 F.2d at 1067, quoted in *Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990). However, when a party submits evidence outside the pleadings in response to a motion to dismiss, the court has discretion to either exclude the additional material and decide the motion on the face of the complaint alone or to convert the motion to one for summary judgment and allow all parties to submit

supporting evidence. *Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir.1991) (quoting *Fonte v. Board of Managers,* 848 F.2d 24, 25 (2d Cir.1988)).

In *Marilyn Miglin, Inc. v. Gottex Industries, Inc.,* 790 F.Supp. 1245, 1249 (S.D.N.Y. 1992), the court considered the very argument plaintiffs make here. The plaintiff in that case claimed that because the defendant offered some evidence in support of its motion to dismiss, the motion should be considered as one for summary judgment. The court found this argument meritless, emphasizing that the decision whether to consider outside evidence and convert a motion to dismiss is clearly within the court's discretion. *Id.* (citing *Fonte, supra,* 848 F.2d at 25).

In response to plaintiffs' argument, defendants restate their intent that the motion be considered as a motion to dismiss. Defendants did not submit any additional outside evidence to contradict plaintiffs' affidavits and maintain merely that plaintiffs fail to state a cause of action with respect to certain claims. The court also notes that three of plaintiffs' affidavits were filed on the same day as their first amended complaint. Any allegations in those affidavits that state a claim for relief could and should have been stated in the amended pleading.

This court declines to convert the motion to one for summary judgment and will decide the motion on the basis of the complaint alone.

**B. *Substance of the Proposed Amendments.***

Defendants contend that plaintiffs' proposed amendments should be denied as they would not withstand a motion to dismiss.

It is well-established that leave to replead may be denied if the proposed amendments would be futile. *Foman, supra,* 371 U.S. at 182, 83 S.Ct. at 230; *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1198–99 (2d Cir.1989); *Albany Ins. Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987), *overruled on other grounds by United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989). When considering the futility of such amendments, the court

must apply an analysis comparable to that governing a motion to dismiss under Rule 12(b)(6). *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Dev. Fund Co., Inc.,* 608 F.2d 28, 42 (2d Cir.1979); *Deem v. Lockheed Corp.,* 749 F.Supp. 1230, 1235 (S.D.N.Y.1989).

Accordingly, the court must accept the allegations in plaintiffs' proposed amended complaint as true, and construe them in the light most favorable to plaintiffs. *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992) (citing *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988)), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Leave to amend the complaint can be denied only if it appears beyond doubt that plaintiffs can prove no set of facts supporting their claims that would entitle them to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Walker, supra,* 974 F.2d at 298. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686.

Excluding all language that refers to plaintiffs' proposed exhibits, plaintiff seeks to amend paragraphs 3, 4, 18, 21, 23, 34, 35, 36, 39, 42, 44, and 68 of their complaint. The amendments refer to plaintiffs' retaliatory discharge, Family and Medical Leave Act, and defamation claims.

**II. MOTION TO DISMISS.**

While the court must presume all factual allegations of the complaint to be true, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *United States v. Bonanno Organized Crime Family,* 879 F.2d 20, 27 (2d Cir.1989).

In order to survive a motion to dismiss, a complaint asserting a civil rights violation must set forth specific factual allegations establishing a *prima facie* case. *Fonte, supra,* 848 F.2d at 25. Naked assertions and conclusory allegations in the complaint are

not sufficient to state a claim. *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir.1994).

### A. *Plaintiff JM's Title VII claim.*

#### 1. Motion to Dismiss.

Section 704(a) of the Civil Rights Act of 1964, provides in pertinent part:

It shall be unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

In order to establish a *prima facie* claim of retaliation, the plaintiff must show that (1) he or she was engaged in an activity protected by Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff based upon the activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993).

In the present case, plaintiff JM states that he assisted and supported his wife in her request to leave her quality control position and return to her former union production job, and that he assisted and supported her in her complaints of discrimination (Item 13, ¶¶ 21, 44). He claims that he was subjected to retaliation and constructively discharged because of his wife's complaints (*Id.*, ¶ 44).

Defendants, relying on *Holt v. JTM Industries*, 89 F.3d 1224 (5th Cir.1996), argue that plaintiff JM does not have standing to sue for retaliation based on his wife's complaints of harassment. In *Holt*, the plaintiff claimed that he lost his position as plant manager after his wife filed a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* After finding that the plaintiff had not participated in his wife's protected activities in any way and was at most a passive observer of her complaints,[2] the Fifth Circuit held that the plaintiff lacked standing to sue under the ADEA. *Holt, supra*, 89 F.3d at 1227–28, 71 FEP at 812.

Because Title VII has the same anti-retaliation provisions as the ADEA, defendants urge the court to apply the *Holt* holding to the present case. However, this court must also look to several cases that have considered third-party retaliation claims brought under Title VII directly.

In *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir.1993), the plaintiff claimed he was retaliated against after a co-worker protested to management about the plaintiff's treatment. The Sixth Circuit noted that:

[C]ourts have routinely adopted interpretations of retaliation provisions in employment statutes that might be viewed as outside the literal terms of the statute in order to effectuate Congress's clear purpose in proscribing retaliatory activity.

*Id.* at 545. The court went on to hold that the plaintiff could state a claim for retaliation based on the protected activity of his representative. *Id.* at 546.

In *Wu v. Thomas*, 863 F.2d 1543, 1547–48 (11th Cir.1989), a husband claimed he was retaliated against after his wife filed an EEOC claim against the university where they were both employed. The court held that his claim was properly before the court. In *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir.1996), the court adopted a broad interpretation of Title VII's retaliation provision. It held that a supervisor stated a claim when he alleged he was retaliated against because of his failure to prevent other employees from filing discrimination complaints.

---

2. Though the court did not define "participation," it indicated that the plaintiff could have participated in his wife's protected activities by helping her prepare her EEOC charge or assisting in any way with its filing.

A number of district courts have also interpreted Title VII as encompassing third-party claims for retaliation. *See Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994) ("[i]n a case of an alleged retaliation for participation in a protected activity by a close relative who is a co-employee, the first element of the prima facie case is modified to require the plaintiff to show that the relative was engaged in statutorily protected expression."); *Mandia v. ARCO Chemical Co.,* 618 F.Supp. 1248, 1250 (W.D.Pa.1985) (finding that 42 U.S.C. § 2000e–3 proscribes retaliation against third-party because of close relative's protected activities); *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978) (wife's allegation of retaliation for husband's anti-discrimination activity stated claim under Title VII); *Asklar v. Honeywell, Inc.,* 95 F.R.D. 419, 424 (D.Conn.1982) (recognizing that protection of Title VII retaliation provision has been extended to third-party reprisals).

The cases that have allowed third-party claims under Title VII appear to have focused on whether there was a causal relationship between the protected activity engaged in by one person and the adverse actions taken against another.

In the present case, plaintiffs state that, beginning in May 1994 and continuing thereafter, plaintiff KM complained to her supervisors of discrimination and harassment by defendant Johnson. Plaintiff JM alleges that he was suspended for three days without cause in May 1994. Plaintiffs also allege that plaintiff JM was treated differently than other employees or contrary to company policy on numerous occasions following plaintiff KM's discharge in November 1994.

▪▪▪ Plaintiff JM states that his wife engaged in statutorily protected activities and that specific adverse employment actions were taken against him. He claims that the deterioration in his employment conditions followed his wife's initial complaints to management and intensified following her discharge. Plaintiff JM has thus alleged protected activity by a close relative, disadvantageous employment action, and a time-

frame indicating a causal connection between the two. Accordingly, plaintiff JM states a claim of retaliation under Title VII sufficient to defeat a motion to dismiss.

### 2. Proposed Amendments.

In the proposed amended complaint, plaintiff JM also claims that he suffered retaliation as a result of his own opposition to defendants' unlawful employment practices. Defendants argue that plaintiff JM's allegations are insufficient to show that he engaged in an activity protected by Title VII.

Viewing the facts in the light most favorable to the plaintiff, I find that the proposed amendments fail to state that plaintiff JM was personally engaged in a protected activity. Plaintiffs assert merely that JM "supported and assisted" his wife in her complaints (Item 13, ¶¶ 21, 44). The only factual allegation plaintiffs offer in support of this claim is that JM assisted his wife in her attempt to return to production work. His actions (requests to management for the transfer and obtaining signatures from fellow employees who had to agree to the transfer) are not protected activities as defined by the statute. Absent any specific factual allegations that plaintiff JM engaged in protected activity, plaintiffs' bare and conclusory statements of his "assistance and support" and of defendants' "knowledge" of such are insufficient to withstand a motion to dismiss.[3] Thus, plaintiffs' proposed amendments would be futile with respect to this claim.

### B. *Plaintiff JM's Human Rights Claim.*

#### 1. Motion to Dismiss.

Plaintiff JM asserts that he was retaliated against in violation of the New York State Human Rights Law (HRL). The HRL provides, in relevant part, that it is unlawful for an employer to "discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this article or because he has filed a complaint, testified or assisted in any pro-

---

**3.** Defendants identified the insufficiency of the pleading with respect to this claim prior to plain-

tiffs' filing their first amended complaint (Item 6, p. 10).

ceeding under this article." N.Y.Exec.Law § 296(1)(e) (McKinney 1993).

 The employer activities prohibited by section 296(1)(e) mirror those proscribed under section 704(a) of Title VII. 42 U.S.C. § 2000e–3. Therefore, allegations that are sufficient to establish a retaliation claim under Title VII are normally sufficient to sustain a claim under the Human Rights Law as well. *Walz v. American Stock Exchange, Inc.,* No. 91 Civ. 7964, 1992 WL 230132 (S.D.N.Y. Sept. 3, 1992). New York courts have consistently relied on federal law in examining HRL claims. *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *New York State Office of Mental Retardation v. New York State Div. of Human Rights,* 164 A.D.2d 208, 563 N.Y.S.2d 286, 287 (3rd Dep't 1990) (adopting federal standard for retaliatory discrimination cases).

 Defendants argue that the language of the statute and the cases interpreting it preclude claims for retaliation allegedly resulting from the protected activities of a spouse. I disagree. Defendants do not cite any cases that considered a third-party claim for retaliation under the HRL, nor could this court find any case dealing directly with the issue.

Defendants rely solely on *Weinstein v. Hospital for Joint Diseases & Medical Center,* 53 A.D.2d 627, 384 N.Y.S.2d 203 (2d Dep't 1976), in support of their position that the spouse of a person discriminated against is an impermissible plaintiff under the HRL. In that case, the plaintiff alleged pain and suffering as a result of the defendant's discrimination against her husband. The defendant was not the plaintiff's employer and she did not allege that the defendant took any direct action against her. The court found that, because she was not the victim of discrimination, the plaintiff was not an aggrieved person under section 297(9) of the HRL.

In a more recent New York case, *Rich v. Coopervision, Inc.,* 198 A.D.2d 860, 604 N.Y.S.2d 429 (4th Dep't 1993), the plaintiff claimed she suffered from loss of health insurance and from personal injuries as a result of alleged age discrimination against her husband. The court again found that the spouse of a victim of discrimination does not have a cause of action under the HRL.

The present case is clearly distinguishable from the derivative claims asserted above. Plaintiff JM was employed by the same defendants in the same plant that allegedly discriminated against his wife. He alleges adverse employment actions directed against him. Plaintiff JM's claim arises, not from defendants' acts of discrimination against his wife, but from the retaliation he was personally subjected to after she lodged her complaints. In other words, plaintiff alleges that he was a victim of defendants' retaliation.

As stated previously, New York courts look to federal law in expounding on the HRL. In the absence of state law on this particular issue, this court is bound by precedent to apply the Title VII analysis articulated above to plaintiff's claim. Accordingly, I find that plaintiff JM states a claim of retaliation under the New York State Human Rights Law sufficient to defeat a motion to dismiss.

**2. Proposed Amendments.**

In the proposed amended complaint, plaintiff JM claims that he was also retaliated against because of his own opposition to defendants' unlawful employment practices.

Plaintiffs fail to state any factual allegations in support of this claim. They merely assert in conclusory terms that JM engaged in protected conduct, that defendants knew of his activities, and that there is a causal relationship between his conduct and the alleged retaliation. While plaintiffs succeed in identifying the legal elements of a *prima facie* claim, they fail to provide any factual basis for their legal assertions. Plaintiffs' proposed amendments would be futile with respect to this claim.

**C. *State Civil Rights Claims.***

Plaintiffs allege that "defendants have discriminated against the plaintiff Katrina Mur-

phy because of her sex and against plaintiffs because of their marital status." (Item 13, ¶ 59). Plaintiffs imply in their complaint that they were each discriminated against based on their relationship with the other. In their memorandum of law, plaintiffs specifically claim that plaintiff JM. was discriminated against because he was married to plaintiff KM (Item 10, p. 7).

Defendants argue that the Civil ·Rights Law (CRL) protects against discrimination based on a persons marital state, that is— single, married, widowed, or divorced, and not on the identity of a particular spouse. Under this analysis, plaintiffs cannot state a claim unless they allege facts indicating they suffered disparate treatment because they were married persons.

The CRL states in pertinent part that:

No person shall, because of race, creed, color, national origin, sex, marital status or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his civil rights. . . .

§ 40–c(2) (McKinney 1992). Thus, it is evident on the face of the statute that the definitions applied under the state Human Rights Law are intended to govern here. Because section 292 does not provide a definition of "marital status," this court must look to the relevant case law.

It is noted at the outset that the parties do not provide, nor could this court find, any cases brought under the CRL alleging marital discrimination based on the identity of the claimant's spouse. However, there is a case which clearly defines the term "marital status" under the HRL.

In *Manhattan Pizza Hut v. New York State Human Rights Appeal Bd.*, 51 N.Y.2d 506, 434 N.Y.S.2d 961, 415 N.E.2d 950 (1980), the plaintiff claimed that she was discriminated against on the basis of her marital status after she was terminated under her employer's antinepotism policy. She had been working under the direct supervision of her husband at the time. The New York Human Rights Division took the position that marital status should be construed broadly to "embrace the identity or situation of the

individual's spouse." *Id.* at 511, 434 N.Y.S.2d 961, 415 N.E.2d 950. The employer argued that the statute merely prevented it from distinguishing among employees based on their categorical description as single, married, separated, divorced or widowed. *Id.* at 510–11, 434 N.Y.S.2d 961, 415 N.E.2d 950. After examining the common understanding of the term and the intent of the legislature, the Court of Appeals determined that "marital status" means the social condition enjoyed by an individual by reason of his or her having participated in marriage. *Id.* at 511, 434 N.Y.S.2d 961, 415 N.E.2d 950. The court found that the plaintiff was terminated because she was married to her supervisor husband, and not because of her marital status. *Id.* at 514, 434 N.Y.S.2d 961, 415 N.E.2d 950. Therefore, the plaintiff was not discriminated against under the HRL.

Given the statute's explicit directive that definitions be taken from the Human Rights Law, the *Manhattan Pizza Hut* analysis applies to the present case.

### a.) Plaintiff Katrina Murphy.

Plaintiff KM claims that she was discriminated against in the workplace because of her gender and marital status. Defendants have not moved to dismiss her gender discrimination claim.

The only allegation plaintiff KM makes regarding her marital status is that defendant Gifford does not like spouses working together, particularly where one is management and the other is union (Item 13, ¶ 16). Thus, plaintiff KM does not allege that she was discriminated against because she was married, but because she was married to a fellow employee. As determined in *Manhattan Pizza Hut*, plaintiff's allegations are insufficient to state a claim for relief under the CRL. Accordingly, defendants' motion to dismiss plaintiff Katrina Murphy's claim of discrimination based on marital status must be granted.

### b.) Plaintiff John Murphy.

Plaintiff JM claims that he was discriminated against because he was married to plaintiff KM. His claim is also clearly not

actionable under the *Manhattan Pizza Hut* analysis. Accordingly, defendants' motion to dismiss plaintiff John Murphy's claim of discrimination based on marital status must be granted.

### D. *Family and Medical Leave Act Claims.*

### 1. Motion to Dismiss.

The Family and Medical Leave Act of 1993 (FMLA) was enacted to balance the demands of the workplace with the needs of families to care for children and sick family members. 29 U.S.C. §§ 2601(a), (b). It entitles an eligible employee [4] to take up to twelve weeks of unpaid leave in a twelve month period because of the birth of a child, the placement of a child with the employee for adoption or foster care, the need to care for a spouse, child, or parent with a serious health condition, or a serious health condition that prevents the employee from performing the functions of his or her job. *Id.* § 2612(a). Following a qualified leave, an employee is entitled to reinstatement of his or her former position, or to an equivalent position with the same pay, benefits and employment terms. *Id.* § 2614(a).

The statute makes it an unlawful practice for an employer to "interfere with, restrain, or deny the exercise of ... any right" by the employee under the Act. 29 U.S.C. § 2615(a)(1). In addition, the employer cannot discharge or discriminate against an employee who opposes any unlawful acts under FMLA. *Id.* § 2615(a)(2).

### a.) Plaintiff Katrina Murphy.

In the present case, plaintiff KM states that she was hospitalized and suffered a miscarriage on August 5, 1994. On August 8, 1994, plaintiff KM requested an additional week of unpaid leave to recover, but was denied. Plaintiff KM states that she was suffering from a serious health condition and was under the care of a physician at the time of her request and thereafter.

The FMLA defines a "serious health condition" as:

... an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.

*Id.* § 2611(11). Though this definition is somewhat ambiguous, the FMLA's legislative history indicates the types of conditions Congress intended to include. The Senate report listed examples of serious health conditions and specifically includes miscarriages along with a number of other pregnancy-related conditions. S.Rep. No. 3, 103rd Cong., 1st Sess.1993, 1993 U.S.C.C.A.N. at 30, 31. It is clear that, in general, Congress intended the FMLA to cover illnesses lasting more than a few days. *Id.; see also,* 29 C.F.R. § 825.114.

Plaintiff KM states that, at the time of her miscarriage, she had worked for defendants for the requisite period necessary for coverage under the FMLA, that she was hospitalized for treatment and remained under medical care for some time thereafter, and that she requested leave within three days of receiving emergency treatment.

Defendants claim that this is insufficient to state a claim because plaintiff must also allege facts demonstrating how she was unable to perform the functions of her position. This argument must be rejected. Plaintiff alleges that she was covered under the statute, requested leave for a serious health condition, and was denied. She states specifically that she received a written doctor's excuse for her condition [5] and that she requested leave in order to recover from the miscarriage and its "devastating emotional

---

4. The FMLA applies to employers engaged in commerce who employ fifty or more persons for each working day during twenty or more weeks in a calendar year. An employee is eligible for leave after being employed for at least twelve months and a minimum of 1250 hours by the employer from whom leave is requested. 29 U.S.C. §§ 2611(2), (4).

5. Plaintiff KM's statement that she had a written doctor's excuse appears in paragraph 32, where plaintiff claims she should have received three days of paid sick leave. This court must construe all allegations in a light most favorable to the plaintiff, and thus will not infer that plaintiff's incapacity was limited to those three days.

impact" on her. Accordingly, I find plaintiff has sufficiently stated a claim under the FMLA with respect to denial of her request for unpaid leave.

Plaintiff KM also claims that defendants violated the FMLA when they conditioned her continued employment on medical verification for all absenteeism in the following six-month period. The FMLA covers only those illnesses that are determined to be a serious medical condition under the Act. Where a serious medical condition exists, an employer is allowed to require that an employee's request for leave be supported by certification from a health care provider. 29 U.S.C. § 2613. Thus, to the extent plaintiff claims that defendants' request for medical verification constitutes a violation of the FMLA, she fails to state a cause of action.

### b.) Plaintiff John Murphy.

Plaintiff JM states that after he took a sick day in March 1995 to care for his son who was ill, defendants refused him the opportunity to make up the sick day and imposed a one-week unpaid suspension on him. Plaintiffs have not alleged, nor is there any indication in the facts, that their child's illness constituted a serious health condition as contemplated by the FMLA. Thus, plaintiff JM fails to state a claim under the FMLA with respect to defendants' actions following his one-day absence.

Plaintiff JM also claims that after he was injured on the job on June 19, 1995, defendants required that he provide a written doctor's excuse in order to receive time off. Plaintiff obtained the requested note and remained out of work until July 5, 1995. As noted above, an employer may require medical certification to support an employee's request for leave under the Act. *Id.*

Taking plaintiffs' factual allegations as true, plaintiff JM fails to state a claim under the FMLA. Accordingly, defendants' motion to dismiss John Murphy's FMLA claim must be granted.

### 2. Proposed Amendments.

In their proposed amendments, plaintiffs seek to add language at paragraphs 3 and 4 asserting that they are "entitled to the benefits of the Family and Medical Leave Act of 1993 (FMLA) for the reasons noted in this complaint." This statement is conclusory and fails to allege any facts that would cure the prior pleading with respect to plaintiff KM's claim regarding her conditions of employment and plaintiff JM's claims. Based on the futility of plaintiffs' proposed amendments, leave to amend is denied with respect to this claim.

### E. Defamation Claims.

### 1. Motion to Dismiss.

In the present case, plaintiffs claim that defendants' "false published written and/or oral statements" have injured them in their professions and standing in the community (Item 13, ¶¶ 66–68).

Under New York law, the elements of defamation, either libel or slander, include: (1) a false and defamatory statement of fact, (2) regarding the plaintiff, (3) the publication of the written or oral statements to a third party, and (4) injury to the plaintiff. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Robinson v. Town of Colonie,* 878 F.Supp. 387, 408 (N.D.N.Y.1995); *Christopher Lisa Matthew Policano, Inc. v. North American Precis Syndicate, Inc.,* 129 A.D.2d 488, 514 N.Y.S.2d 239 (1st Dep't 1987).

Statements that tend to disparage or injure plaintiff in his or her trade or profession are slanderous or libelous *per se. Davis v. Ross,* 754 F.2d 80, 82 (2d Cir.1985); *Liberman v. Gelstein,* 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992); *Nichols v. Item Publishers,* 309 N.Y. 596, 600, 132 N.E.2d 860 (1956). Where the statements are defamatory *per se,* the law presumes that damages will result and they need not be alleged. *Weldy, supra,* 985 F.2d at 61–62.

### a.) Katrina Murphy.

Plaintiffs' first amended complaint refers to numerous statements allegedly made by defendants and directed at plaintiff KM.

In November 1994, plaintiff KM received a letter from defendants that falsely

characterized her behavior and job performance as unsatisfactory. Plaintiffs do not allege that the letter was published to a third party, nor is there any indication in the facts that plaintiff can make such a claim. Therefore, plaintiff KM fails to state a cause of action with respect to this document.

■ The complaint also alleges that defendant Johnson, while talking to another employee, made a hand gesture toward plaintiff indicating that plaintiff KM is gay. The complaint alleges no facts indicating that any written or oral statement was made that questioned plaintiff's sexuality. Thus, with respect to this allegation, plaintiff fails to state a claim.

■ Plaintiff KM also states that defendant Johnson told other employees that she was a "bitch" and "on the rag." Statements are not slander *per se* unless they relate to plaintiff KM's profession or trade. Where the statements are unrelated to the plaintiff's work, the claimant must allege special damages. *Aronson v. Wiersma*, 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006, 483 N.E.2d 1138 (1985); *Newsday, Inc. v. C.L. Peck Contractor, Inc.*, 87 A.D.2d 326, 451 N.Y.S.2d 415 (1st Dept.1982).

■ Special damages contemplate a loss that is economic or pecuniary in nature. Prosser and Keeton, Torts § 112, at 794 (5th ed. 1984). General conclusory allegations of some impairment to plaintiff's reputation are insufficient to show actual damages. *Newsday, supra*, 87 A.D.2d at 328, 451 N.Y.S.2d 415 (citing *Cohn v. National Broadcasting Co. Inc.*, 67 A.D.2d 140, 414 N.Y.S.2d 906 (1st Dep't 1979), *aff'd*, 50 N.Y.2d 885, 430 N.Y.S.2d 265, 408 N.E.2d 672, *cert. denied*, 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980)). Plaintiff KM has not alleged, nor do the facts indicate, any special damages resulting from these statements.

In addition, words such as those attributed to defendant Johnson are generally considered incapable of being objectively characterized as true or false. As such, they express matters of opinion which are not actionable as a matter of law. *See, e.g., Miller v. Richman*, 184 A.D.2d 191, 592 N.Y.S.2d 201 (4th Dep't 1992); *Amodei v. New York State Chi-*

*ropractic Ass'n*, 160 A.D.2d 279, 553 N.Y.S.2d 713 (1st Dep't 1990), *aff'd*, 77 N.Y.2d 891, 568 N.Y.S.2d 900, 571 N.E.2d 70 (1991). Accordingly, plaintiff KM has failed to state a claim upon which relief can be granted.

■ Plaintiffs further allege that beginning in April of 1994 and continuing thereafter, defendant Johnson falsely told other employees that plaintiff KM did not know her job and did not know what she was doing. Defendants argue that these statements do not rise to the level of defamation *per se*.

In the New York cases that have dealt with this issue, the determination appears to depend, in part, on the nature of the parties' relationship. Defamation *per se* has been found in those cases where an outside party published statements to the claimant's current or potential business associates or clients. *Grimaldi v. Schillaci*, 106 A.D.2d 728, 484 N.Y.S.2d 159 (1984) (forwarding copies of letter to businessman's associates and suppliers implying that he was dishonest was libel *per se*); *LeDans Ltd. v. Daley*, 10 A.D.2d 502, 200 N.Y.S.2d 618 (1960) (libel *per se* where publication accused businessman of fraudulent practices).

In contrast, statements regarding an employee's work performance made within the context of an employment relationship have generally been characterized as nonactionable expressions of opinion. *See McDowell v. Dart*, 201 A.D.2d 895, 607 N.Y.S.2d 755 (4th Dep't 1994) (statements regarding work performance are opinion and are not actionable); *Miller, supra*, 184 A.D.2d at 193, 592 N.Y.S.2d at 203 (statements criticizing plaintiff's job performance and comparing her unfavorably with other workers were nonactionable opinions); *Williams v. Varig Brazilian Airlines*, 169 A.D.2d 434, 564 N.Y.S.2d 328 (1st Dep't 1991) (memo and letter criticizing plaintiff's work performance, attitude, and disposition were clearly expressions of opinion).

While New York courts have found some employer statements to be defamatory *per se*, the facts of those cases are clearly distinguishable from the present claim. *See Davis, supra*, 754 F.2d at 80 (former employ-

er's unsolicited letter to other potential employers impugning plaintiff's work performance and personal habits was defamatory *per se* ); *Kraus v. Brandstetter,* 167 A.D.2d 445, 562 N.Y.S.2d 127 (2d Dep't 1990) (vote of "no confidence" printed in hospital newsletter was defamatory *per se* because it presented average reader with impression that determination was based, not on opinion, but on facts not revealed in the written notice); *Carney v. Memorial Hospital & Nursing Home,* 64 N.Y.2d 770, 485 N.Y.S.2d 984, 475 N.E.2d 451 (1985) (employer's widely published statement that plaintiff had been fired "for cause" was libel *per se* ).

 The standard for defamation *per se* is whether the statements have the potential to harm the plaintiff in his or her business or profession. A cause of action for injury to business reputation accrues when the false statement becomes widely known or is brought to the attention of the general public. *Celi v. Canadian Occidental Petroleum Ltd.,* 804 F.Supp. 465, 470 (E.D.N.Y. 1992) (citations omitted). Statements made to other employees in the workplace do not meet this standard as determined under New York law. Accordingly, defendants' motion to dismiss the defamation claim of Katrina Murphy must be granted.

 Defendants claim that such statements, even if defamatory, are protected by qualified privilege. This court disagrees. Defendants cannot realistically argue here that defendant Johnson's statements to plaintiff's co-workers were "[a] communication made by one person to another upon a subject in which both have an interest...." *Stillman v. Ford,* 22 N.Y.2d 48, 53, 290 N.Y.S.2d 893, 238 N.E.2d 304 (1968).

 Defendants further argue that plaintiffs claims are barred by the statute of limitations. N.Y. C.P.L.R. 215(3) (McKinney 1990) (action for libel or slander must be commenced within one year). Though plaintiffs did not make a claim for defamation in their initial pleading, their complaint included all of the allegations stated above. Thus, defendants were accorded the requisite "notice of the transactions, occurrences, or series of transactions or occurrences, to be

proved pursuant to the amended pleading." *Id.* 203(f) (McKinney 1996). Plaintiffs' claims for defamation are therefore deemed interposed as of May 1, 1995, the date of the original pleading.

**b.) John Murphy.**

 Plaintiff JM alleges that he was defamed when defendant Johnson told other employees that plaintiff was a slow and lazy employee, that he was not putting the required effort into his job, and that he was incompetent. For the reasons stated above, defendants' motion to dismiss the defamation claim of John Murphy must be granted.

**2. Proposed Amendments.**

 Plaintiffs propose to amend each alleged defamatory statement by asserting that the statements were made on a daily basis in the workplace, that they were made within one year of commencement of this lawsuit, that they were made with the intent to injure plaintiffs' professional reputation and standing in the community, and that they caused other employees to shun plaintiffs. Besides being vague and conclusory, the amendments are futile because they fail to state factual allegations that would establish defamation *per se,* or in the alternative, special damages.

**F. *Loss of Consortium/Services Claims.***

Plaintiffs both claim injury to their right to "participate fully in the society and companionship" of their spouse resulting from the alleged violations of Title VII and the New York State Human Rights Law, and from the alleged defamation. (Item 10, p. 8; Item 13, ¶¶ 71, 75).

 The common law concept of consortium includes not only loss of support or services of a husband or wife, but "it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more." *Millington v. Southeastern Elevator Co.,* 22 N.Y.2d 498, 502, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968). Loss of consortium is not, in and of itself, a basis for a claim, but is derivative of a tort cause of action. *See id.* at 507, 293 N.Y.S.2d 305, 239

N.E.2d 897; *see also Belanoff v. Grayson,* 98 A.D.2d 353, 471 N.Y.S.2d 91 (1st Dep't 1984).

 It is clear that federal courts do not recognize such derivative claims based on federal civil rights violations. *See Mohamed v. Marriott Intern., Inc.,* 905 F.Supp. 141, 159 (S.D.N.Y.1995); *Doe v. R.R. Donnelley & Sons Co.,* 843 F.Supp. 1278, 1283–84 (S.D.Ind.1994), *aff'd,* 42 F.3d 439 (7th Cir. 1994); *Quitmeyer v. Southeastern Pa. Trans. Auth.,* 740 F.Supp. 363, 370 (E.D.Pa.1990); *Tauriac v. Polaroid Corp.,* 716 F.Supp. 672, 673–74 (D.Mass.1989). Thus, plaintiffs cannot state a claim for loss of consortium under Title VII.

New York appellate courts have also addressed this issue and found that the spouse of an employee alleging discrimination is not a "person aggrieved" under the state HRL. Therefore, a spouse cannot state a cause of action for loss of consortium under the statute. *See Mohamed, supra,* 905 F.Supp. at 159; *Mehtani v. New York Life Ins. Co.,* 145 A.D.2d 90, 537 N.Y.S.2d 800, 804 (1st Dep't 1989); *Belanoff, supra,* 98 A.D.2d at 358, 471 N.Y.S.2d at 94.

Plaintiffs argue, and defendants concede, that a claimant can state a claim for loss of consortium under New York law based on defamatory statements made against his or her spouse. *Garrison v. Sun Printing & Publishing,* 207 N.Y. 1, 10, 100 N.E. 430 (1912). However, it has already been determined that plaintiffs fail to state a claim for defamation.

Accordingly, defendants' motion to dismiss the loss of services claims of plaintiff John Murphy and plaintiff Katrina Murphy must be granted.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to amend (Item 27) is DENIED. Defendants' motions to dismiss under Rule 12(b)(6) (Items 5 & 18) are DENIED as to John Murphy's Title VII claim and Human Rights Law claim, and Katrina Murphy's Family and Medical Leave Act claim, and GRANTED as to John Murphy's Family and Medical Leave Act claim, the Civil Rights Law claims of both plaintiffs, the defamation claims of both plaintiffs, and the loss of consortium claims of both plaintiffs.

**SO ORDERED.**